JONATHAN  MATHEWS  &  another  *vs.*  JAMES  KELSEY,  appellant.

*Railroad corporations—rights of in highways—temporary obstructions of streets.*

A railroad corporation, whose track is located within the limits of a highway, may load and unload one of its cars while temporarily standing for that purpose in the street, provided it be done in such a prudent manner as not unreasonably to interfere with the rights of those having occasion to use the way for the ordinary purposes of travel.

And for the purpose of unloading a car of flour, a merchant, whose store is on the street, may use skids, temporarily elevated above the ground and extending from the car-door, fifty feet to the store, provided there is ample room between the car and the opposite side of the street to accommodate the travel of the street.

ON  FACTS  AGREED.

TRESPASS for damage to personal property.

The case came to this court by appeal from a judgment of the municipal court of Portland.

Commercial street, in Portland, extending from the depot of the Atlantic & St. Lawrence Railroad Company, on India street, southwesterly, along the head of wharves, across the city to the depot of the Portland, Saco & Portsmouth Railroad Company, was laid out in 1850 by the city authorities.

The plaintiffs' store is upon the north-westerly side of Commercial street, where, at the time of the alleged trespass, they were carrying on business as wholesale flour dealers. In 1850, the Atlantic & St. Lawrence Railroad Company duly located their railroad along Commercial street, between the two depots.

The street is one hundred feet wide, and the track is laid on the extreme north-westerly side of the location. The distance from the plaintiffs' store to the nearest rail is fifty feet, and the distance from the other rail, to the opposite side of the street, is forty-four feet. The track is planked between the rails, and that portion of the railroad location outside of the track is wrought for a street like the remainder of it.

Since the construction of the railroad along the street, it has been customary for merchants, having flour arrive by the railroad, to have the car placed on the track opposite their store, and to place skids elevated above the ground some three feet, and extending from the car to the store, and upon them to roll the barrels of flour from the car to the store. When the skids are up, they prevent the passage of teams between the car and the store.

On the day of the alleged trespass, the plaintiffs had a car of flour arrive in front of their store, and thereupon put up their skids and commenced unloading the flour in the customary manner. Some teams came along, among them the defendant's, and the plaintiffs took down the skids and let them pass. The defendant went down street a few rods and returned, driving his team to the skids, then up, and requesting the plaintiffs' agent to remove the skids, which he refused to do; whereupon the defendant threw them down, drove his team through, thereby breaking down a wooden horse of the plaintiffs, which supported the skids, and the skid between the horse and the car.

The street between the car and the opposite side of the street was unobstructed, and there was nothing to prevent the defendant's team, which was not loaded, from crossing the railroad track and passing along on the other side.

It takes from ten to fifteen minutes to unload a car of flour by using skids; and from an hour and a half to two hours, to unload one and remove the flour from the street into the store, without skids.

If the plaintiffs were entitled to recover, judgment to be entered for one dollar damages and costs, as provided in the report.

*Davis & Drummond*, for the plaintiffs.

*W. L. Putnam*, for the defendant.

DANFORTH, J. It is undoubtedly true that the location of a railroad within the limits of a highway would give the corporation using it only the rights of transit such as are necessarily connected

therewith, or incidental thereto. This would not include the right to build permanent structures which would interfere with the public travel. But, in this case, the illegality complained of is not the erection of any such structures, but the temporary stopping of the cars for the purpose of unloading, and the use of such appliances as were found useful and convenient for that purpose. There was sufficient space of way left unincumbered, to accommodate the public travel, and the incumbrance was of but a few minutes' duration. The legal location of the railroad is not questioned. The corporation, then, had the right to carry passengers and freight in their cars along that way. The loading and unloading would seem to be but a necessary incident to the right of carrying. It is true that railroads ordinarily have depots as useful and convenient for this purpose, but no law compels them to build such appliances or precludes them from loading or unloading in other places. The only limit to their pleasure or convenience, in this respect, is a due and reasonable regard to the rights of others. They would not, of course, be allowed to infringe upon private property; but in this case their car was in the public way, and one in which, by law, they have the same right as others. Their right is one of transit, and such is the right of the public, and no more.

As an incident to this right of transit, the public have a right to load and unload such vehicles as they find it convenient to use. But in this respect each individual is restrained by the rights of others. He must do his work in such careful and prudent manner as not to interfere unreasonably with the convenience of others. Why should not the railroad corporation have the same right to load and unload, doing it in such a manner as not unreasonably to interfere with the rights or convenience of those having occasion to use the way for ordinary purposes of travel, and having regard to the different vehicles used, and the different means of propelling them?

But this case does not present so much the rights of the railroad company, as those of the plaintiffs. It seems that they were doing business upon the line of the way, and had occasion for an addi-

tional supply of merchandise. This could be obtained only over the highway, in some kind of a carriage, and could be got into the store only by unloading from the street. While so doing the carriage must be stationary, and often other instruments must be used to assist. In the mean time the way must be more or less obstructed, and the convenience of travelers, especially those who have occasion to pass over the side-walk, interfered with. If the plaintiffs had elected this course and performed their work in a reasonable manner, no one would have questioned their right, and the passers would have submitted to the temporary obstruction without a murmur.

But instead of this they procured their goods to be brought in front of their door by a car, and there unloaded. The time of occupying the road by the latter method was much less than by the former. There was ample room for the accommodation of the travel; in fact, the obstacle was much less than would have arisen from the use of trucks and drays ordinarily employed on such occasions,—and the inconvenience to the defendant was rather diminished than increased. Under these circumstances we see no illegality in the acts of the plaintiffs, and, according to the agreement of the parties, judgment is to be rendered in their favor for one dollar damages and costs, as provided in the report.

APPLETON, C. J.; CUTTING, KENT, WALTON, BARROWS, and TAPLEY, JJ., concurred.