GLAESSNER v. THE ANHEUSER-BUSCH BREWING ASSOCIATION *et al.*, Appellants.

1. **Municipal Corporation:** CONTROL OF STREETS : RAILROADS : ST. LOUIS CITY CHARTER. The power granted to the city of St. Louis to regulate the use of its streets (charter, art. 2, sec. 26, par. 2) extends to public uses only and does not authorize an ordinance permitting a private corporation to build a railroad track and run trains on and across the streets of the city · for the transaction of its private business.

2. ——— : ——— :———. Nor is such ordinance authorized by a provision of the charter (art. 3, sec. 26, par. 11) conferring on the city power to grant to persons or corporations the right to construct railways in the city and to regulate and control the same.

3. ——— : ——— : ———. Said last-mentioned charter provision has reference only to railroads of a public character and not to those constructed for private purposes only.

4. ——— : ——— : PUBLIC NUISANCE. A railroad track constructed under such unlawful ordinance constitutes a public nuisance.

5. ——— : INJUNCTION BY INDIVIDUAL : SPECIAL INJURY. An individual must show special damages before he can maintain an injunction against such nuisance.

6. ——— : ——— : ———. Where the evidence shows that plaintiff is a retail merchant doing business near the place of the nuisance, and that it will divert travel from its accustomed street and thereby decrease the value of his property and diminish his trade, he is entitled to maintain an injunction against it.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*James O. Broadhead* for appellant.

(1) The· mayor and municipal assembly of the city of St. Louis have authority under the charter to regulate the use of the streets of the city. Art. 2, sec. 26, subdivision 2; *Building Ass'n v. Telephone Co.*, 88 Mo.

272 ; *Tate v. Railroad,* 64 Mo. 158 ; *Porter v. Railroad,* 60 Mo. 160 ; *Randle v. Railroad,* 65 Mo. 330 ; *Cross v. Railroad,* 77 Mo. 318 ; *Refining Co. v. Elevator Co.,* 82 Mo. 126 ; Thompson on Highways, p. 6 ; *Macomber v. Nichols,* 34 Mich. 212. (2) If the city of St. Louis has such power, the construction and operation of such a railroad track or switch as contemplated under the ordinance in question, if done under the terms of the ordinance and in a skilful and prudent manner, is not a nuisance, although it may produce injury or damage to the owners of property adjacent to the streets over which such railway track or switch may be laid and operated. *Randle v. Railroad,* 65 Mo. 330, and cases cited above ; *Macomber v. Nichols,* 34 Mich. 212 ; *Gibson v. Donk,* 7 Mo. App. 37 ; *Vanderpool v. Hupon,* 28 Barb. 196 ; *Jackson v. Smidt,* 14 La. Ann. 806 ; *Haight v. Keokuk,* 4 Iowa, 109 ; State Constitution, art. 12, sec. 20 ; *Railroad v. City of St. Louis,* 66 Mo. 256 ; Thompson on Highways, ch. 2, pp. 25–27 ; High on Injunctions, sec. 762 ; *Werth v. Springfield,* 78 Mo. 107 ; *Rigney v. Chicago,* 107 Ill. 64. (3) The injury complained of is not peculiar to the plaintiff ; he has shown no special damage likely to result to him. Cases cited above ; High on Injunction, sec. 762 ; *Coal Co. v. St. Louis,* 2 Dillon, 90 ; *Werth v. Springfield,* 78 Mo. 107; *Rigney v. Chicago,* 107 Ill. 64.

*Andrew M. Sullivan* for respondent.

(1) Courts of equity will enjoin *ultra vires* acts of corporations injurious to private persons. *Hare v. Railroad,* 2 Johns. & H. 80, 111 ; *Raphael v. Railroad,* L. R. 2 Ch. 147 ; *Glasgow v. City of St. Louis,* 15 Mo. App. 113–125. (2) The power of the city to grant to corporations the right to construct railways in the city is not to be found in the provision of the charter giving it power to "regulate the use" of streets, as contended ; but in the provision that it shall "have sole power and

authority to grant to persons or corporations the right to construct railways in the city, subject to the right to amend, alter or repeal any such grant, in whole or in part, and to regulate and control the same, as to their fares, hours and frequency of trips, and the repair of their tracks and the kind of their rails and vehicles," etc.    Art. 3, sec. 26, par. 11.    (3)  But from whatever provision the power to make such grants is to be derived, the ordinance in question is *ultra vires* and void, because there is therein no reservation to the city of those rights and powers of control, amendment and repeal required by the charter, and no power nor right reserved by which the city may see to it that streets dedicated solely to public uses are not diverted from the trust to steam railroads for private use and gain alone. *Refining Co. v. Elevator Co.*, 82 Mo. 121.    (4)  The grant by the city of the right or license to build and operate a steam railroad upon the streets, for private and not for public use, and the delivery up of the streets for that purpose, would constitute a violation of the trust to public uses, upon and for which the streets were held by the city ; and a court of equity will enjoin the consummation of such a breach of trust at the suit of any person who would be specially injured thereby. *Glasgow v. City*, 15 Mo. App. 112 ; *Refining Co. v. Elevator Co.*, 82 Mo. 121 ; *Jacksonville v. Railroad*, 67 Ill. 540 ; *Heath v. Railroad*, 61 Iowa, 11 ; *State v. Burdetta*, 73 Ind. 194 ; *Ferrenbach v. Turner*, 86 Mo. 416 ; *Building Ass'n v. Telephone Co.*, 88 Mo. 172; *Rutherford v. Taylor*, 38 Mo. 315 ; *Price v. Thompson*, 48 Mo. 361 ; *Asylum v. Troy*, 32 Am. Rep. 286 ; *Cape Girardeau v. Renfro*, 58 Mo. 265 ; 2 Dillon Mun. Corp. 653.    (5)  Said railroad would cause a special damage to plaintiff if it would damage or diminish the value of his premises or the rental thereof ; or if it would damage, or diminish his business carried on there ; or if it would render his premises less accessible.    *Rigney v. Chicago,*

102 Ill. 64; *Railroad v. Ayers*, 106 Ill. 511; *Gotts-chalk v. Railroad*, 14 Neb. 550; *Mollandin v. Railroad*, 4 McCrary, 290; *City of Denver v. Bayler*, 7 Col. R. 113; *Railroad v. Groves*, Texas Ct. App. (civil cases), White and Wilson, 301. Also for consequential damages: *City of Reading v. Akthunate*, 93 Pa. St. 400; *Railroad v. Stein*, 75 Ill. 41–47. If the building and operation of this railroad would be a diversion of the use and a violation of the trust of dedication, it would also constitute in that case the imposition of an additional burden or servitude, and thereby result in the "taking or damaging" of plaintiff's property without compensation and contrary to the constitution. Const. Mo, art. 2, sec. 20; *Lackland v. Railroad*, 31 Mo. 187. It is equally unconstitutional, even though a street be considered entirely public property. 73 Ind. and 82 Mo., *supra*.

BLACK, J.—By the decree entered in this case the defendant, the Anheuser–Busch Brewing Association, a corporation created under the laws of this state, was enjoined from constructing and maintaining a single or double railroad switch track on, over or across Broadway, Seventh and Ninth streets in the city of St. Louis; and the city, its mayor and other officers were enjoined from delivering possession of the streets to the brewing association for such purposes.

The pleadings and the proof disclose the following facts: The corporate authorities of the city passed an ordinance giving to the brewing association the right to lay down and operate with steam or cable power, subject to all laws and ordinances then or thereafter passed in relation to the obstruction of public streets, a single or double railroad switch from its brewery to the Mississippi river, over and across Broadway, Seventh and Ninth streets. These streets run north and south, and the track is to be laid between Dorcas and Arsenal streets which run east and west. Other provisions are

made whereby the brewing association engages to protect the city against damages that may arise to persons or property by the construction and operation of the switch, and it is to be constructed under the supervision of the street commissioner.

The ordinance also provides: "The said Anheuser-Busch Brewing Association shall place and maintain upon each graded, guttered and paved street, having sidewalks laid thereon at the point across which the said railroad shall run, a gate, at each side of the said railroad track, of such character and dimensions as shall be approved by the street commissioner; and the said brewing association shall keep a watchman at all the street crossings where gates are required as aforesaid, both day and night, while cars are running over the said tracks, whose duty it shall be to see that the said gates are closed while trains or cars are crossing the said streets; and no cars shall be run or operated across any of the said streets between the hours of eight o'clock and nine o'clock in the forenoon, nor between the hours of eleven o'clock in the forenoon and one o'clock in the afternoon, nor between the hours of three o'clock and half past four o'clock in the afternoon of any day between the first day of September and the first day of July of the succeeding year inclusive  *  *  *. In no case shall cars be allowed to obstruct public travel on any street crossed by said tracks for a longer period than five minutes at any one time."

The brewing association buildings occupy a large space of ground on the west side of Ninth street. The proposed switch tracks go east from the brewery over that street, then across Seventh and Broadway streets, and thence on to the river front where they are connected with the tracks of the St. Louis, Iron Mountain and Southern railroad, the whole distance being about a quarter of a mile. By reason of a park and the barracks to the east of Broadway street, a large travel going north and south is made to pass over Ninth,

Seventh and Broadway streets, and the latter is the principal thoroughfare. The plaintiff owns improved property having a front of fifty-six feet on the west side of Broadway street and in which he lives and carries on the business of a retail merchant of dry goods and notions. His property is seventy or seventy-five feet north of the proposed crossing of the track. The property on the street, on each side of the proposed crossing, is used for stores, shops, boarding houses and residence purposes.

The business of the brewing association is large; and it is estimated that the shipments of beer and receipts of material will average forty carloads per day. Aside from the streets and alleys, the association owns the property on which it is proposed to build and operate the switch; and the first question is, whether the city has any authority in law to grant the right to construct and operate railroad switch tracks for private purposes across these streets.

By article 3, section 26, paragraph 11, of the charter of the city of St. Louis, the city has power "to grant to persons or corporations the right to construct railways in the city, subject to the right to amend, alter or repeal any such grant, in whole or in part, and to regulate and control the same, as to their fares, hours and frequency of trips, and the repair of their tracks, and the kind of their rails and vehicles." This provision of the charter applies only to railroads of a public character, and has no reference to railroad tracks constructed for private purposes only. Indeed, the defendant does not rely upon this paragraph of the charter for authority on the part of the city to grant the right claimed in this case; but reliance is placed upon that part of paragraph 2 of the same article and section which gives to the mayor and assembly power "to construct and keep in repair all bridges, streets, sewers and drains, and to regulate the use thereof."

We have held that this power to regulate the use of streets is not limited to the mere right to regulate travel thereon, but under it the city may authorize the laying of gas, water and sewer pipes, and all such like uses as the public good and convenience may require; the rights of the abutting property-owners must yield to all such new public uses. *Ferrenbach v. Turner*, 86 Mo. 416. And in the more recent case of *The Julia Building Association v. Telephone Co.*, 88 Mo. 258, it was, among other things, in substance, said, that when the public acquires a street, by condemnation, grant or dedication, it may be applied to all uses consistent with, and not subversive of, the use contemplated by the grant, dedication or condemnation. It was accordingly ruled that the erection of telephone poles was a proper use of the street; but the ruling is based upon the ground, and can stand on no other, that the use was a public one. The case furnishes no authority for the proposition that under the general power to regulate the use of streets the city may devote a street or any part thereof to private use. The logic and argument of the opinion is a refutation of any such power. The cases before cited are in perfect accord with *The Belcher Sugar Refining Co. v. Elevator Co.*, 82 Mo. 124, where it is held property acquired for public use cannot be appropriated to private use. "The latter," says the court, "can no more be done than could the property in the first instance have been condemned for such use."

It has been held in a number of cases in this court that a steam railroad built and operated upon a street in a city or town, by legislative authority, is not a nuisance. *Porter v. Railroad*, 33 Mo. 128; *Randle v. Railroad*, 65 Mo. 325; *Cross v. Railroad*, 77 Mo. 318. But in all of these cases the railroad was a public corporation, and it was considered that the use of the streets for such purposes was not a perversion of the highway from the purposes for which it was dedicated.

The question here is whether the city, under its general power to regulate the use of the streets, has the power to legalize the construction and operation of railroads thereon for private purposes only. On the question of such general power it has been said : " The king cannot license the erection or commission of a nuisance; nor in this country can a municipal corporation do so by virtue of any implied or general powers. A building, or other structure of a like nature, erected upon a street without the sanction of the legislature, is a nuisance, and the local corporate authorities of a place cannot give a valid permission thus to occupy streets without express power to this end conferred upon them by charter or statute. The usual power to regulate and control streets has even been held not to authorize the municipal authorities to allow them to be encroached upon by the adjoining owner by erections made for his exclusive use and advantage, such as porches extending into the streets, or flights of stairs leading from the ground to the upper stories of buildings standing on the line of the streets." 2 Dillon on Municipal Corp.. [3 Ed.] sec. 660.

Under the general power the city may determine to what extent the streets may be incumbered with building material, and there are many other necessary limitations upon the right of the public to an unobstructed way which are the proper subjects of municipal regulation. All these temporary obstructions are justified on the ground of necessity, and can be allowed on no other ground. Here, however, the city has attempted to devote the streets to a use which is unusual, is of a permanent character, and for a purpose which is purely private. Gates are to be placed at the crossings, and the ordinance prescribes other regulations, all designed to protect the public; but all the details show that the proposed use of the streets is no ordinary one. That the public travel will and must be greatly obstructed is

clear, and if such an ordinance as this is to be upheld there is no telling where such municipal legislation will end. The trust reposed in the city of St Louis to regulate the use of the streets is for the purpose of keeping them open and free to all, and we can but conclude that the ordinance in question violates that trust and is void.

The city having no rightful authority to enact the ordinance, the switch tracks constructed thereunder on the public highway would be a public nuisance; and in order for the plaintiff to maintain this injunction he must show some special injury over and above the general injury to the public. Some of the evidence offered by the defendant is that the construction of the switch will not decrease the value of the plaintiff's property. On the other hand it alleged and showed that plaintiff's property is within seventy-five feet of the proposed crossing, and the weight of the evidence is that these proposed crossings will have the effect to divert the travel to streets west of the brewery, and thereby decrease the value of the plaintiff's property, and take away some of the trade which he at this time enjoys. The evidence satisfied the trial court and it satisfies us that plaintiff will suffer an injury which entitles him to maintain this suit.

The judgment is affirmed.    All concur.