Downing v. Dinwiddie.

---

DOWNING, *Appellant,* v. DINWIDDIE *et al.*

### Division One, January 10, 1896.

1. **Supreme Court Practice:** EQUITY CASE: REVIEWING FACTS. In equity cases the supreme court will review the law and facts; but the court will exercise its discretion as to entering final judgment in such cases as the interests of justice may appear to require.

2. **Easement:** RIGHT OF WAY: ADVERSE POSSESSION: LIMITATION. Where parties have taken possession of a strip of land, under a deed granting them a right of way over it, they can not assert an exclusive claim to it by adverse possession (as against the grantor of the right of way) without, at least, a clear and unequivocal expression of such a claim. Mere acts of ownership, consistent with their right of way, will not start the statute of limitations in their favor.

3. ———: ———: INJUNCTION. Injunction is an appropriate remedy to protect the enjoyment of an easement of access afforded by an alley to residence property in a town, where such easement is enjoyable in common with the party against whom the remedy is asked.

4. ———: ———: ———: DAMAGES. Where injunction will lie to sesure the enjoyment of an easement, damages for disturbance thereof may be recovered, as incidental to the main relief awarded.

5. **Appellate Practice:** ESTOPPEL. Parties are bound on appeal by the positions they have taken in the trial court.

6. ———: EVIDENCE. Objections to the competency of testimony can not be first interposed on appeal in the supreme court.

7. **Equity:** LAND TITLE: RES JUDICATA. A decision upon title is final between the parties in a suit in equity.

*Appeal from Boone Circuit Court.*— HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*C. B. Sebastian* and *J. H. Murry* for appellant.

(1) Under the evidence the statutes of limitations did not obtain and the court erred in finding that they did. *Gordon v. Eans,* 97 Mo. 587; *Handlan v. McMannus,* 100 Mo. 124; *House v. Montgomery,* 19 Mo. App. 170. (2) There is some evidence tending to show that the defendants thought that under their deed they were the owners of the strip of ground, and some evidence tending to show that Miss Lou Wright had the same impression. But this claim made by defendants was under the deed and not adverse to it. This was a mutual mistake, and not an adverse holding, and did not start the statutes of limitations running against the owner of the fee. *Wheelock v. Overshiner,* 110 Mo. 100. (3) There was nothing in the manner in which the defendants held and used the alley inconsistent with their right of way, or that would give plaintiff any notice of an adverse claim until October, 1891. *Railroad v. Miller,* 115 Mo. 158.

*Wellington Gordon* and *Webster Gordon* for respondents.

(1) Injunction will not lie as an original and independent proceeding to determine the title to real estate. *Smith v. Jamison,* 91 Mo. 13, and cases there cited; 10 Am. and Eng. Encyclopedia of Law, p. 806. (2) Nor will injunction lie to restrain a trespass, unless the injury sought to be averted goes to the destruction of the inheritance or is otherwise irreparable in its character. *Weigel v. Walsh,* 45 Mo. 560; *Anderson v. St. Louis,* 47 Mo. 479; *Damschroeder v. Thias,* 51 Mo. 100; *James v. Dixon,* 20 Mo. 79; *Boeckler v. Railroad,* 10 Mo. App. 448; *Bailey v. Wade,* 24 Mo. App. 186. (3) The appellant had a complete and adequate remedy

at law and was not entitled to equitable relief. (4) The open, notorious, and hostile possession, by the respondents, of the strip, belt, or parcel of land in controversy in this case, for a period of ten years or more, would confer upon them a good title under the limitation law. *Mather v. Walsh*, 107 Mo. 121; *Comstock v. Eastwood*, 108 Mo. 41; *Dausch v. Crane*, 109 Mo. 323; *Allen v. Mansfield*, 108 Mo. 343; *Ozark Land Co. v. Hays*, 105 Mo. 143; *Brown v. Railroad*, 101 Mo. 484. (5) Nothing is left for presumption in this case, as the evidence clearly shows actual knowledge on the part of Miss Lou Wright, by, through, and under whom the appellant claims the fee to the strip, belt or parcel of land in controversy in this case, of respondent's claim, possession and her acquiescence in it for twelve or fourteen years. By reason thereof she was estopped from asserting title or ownership to said land, and we assume that appellant acquired no greater rights under his deed of conveyance from her than she had. *Dausch v. Crane*, 109 Mo. 323; *Allen v. Mansfield*, 108 Mo. 343. (6) The question of adverse possession was one of fact to be determined under proper instructions by the court or jury trying the cause. *Wilson v. Taylor*, 119 Mo. 626; *Harper v. Morse*, 114 Mo. 317. (7) When a cause is submitted to a court and a jury dispensed with, the facts upon which the court bases its judgment are incontrovertible here, and this court will assume the facts to be as the trial court found them. *Hamilton v. Boggess*, 63 Mo. 233; *Gaines v. Fender*, 82 Mo. 497; *Irvin v. Woodmansee*, 104 Mo. 403.

BARCLAY, J.—The case opens with a petition for injunction to restrain defendants from obstructing a private alley or passage way which plaintiff claims the right to use as part of a lot which he owns in Columbia, Missouri.

The defense is the statute of limitations, under which defendants claim exclusive title to the part of plaintiff's lot on which the alley is located.

The parties are neighbors. Their respective positions are indicated by the accompanying diagram.

A number of facts are admitted. They form the groundwork of the case, which being equitable in nature requires at our hands a review of the evidence as well as of the law considered in the trial court.

Plaintiff acquired by duly recorded deed from Miss Wright, in May, 1891, lot 14 of block 1· in Kelley's addition to Columbia, with all· rights, appurtenances, etc., belonging to it.

Lot 14 includes part of the strip marked "Alley" on the plat, as that lot extends from St. James street to the line "N S.," running north and south through the block.

The "alley" in question in this suit is a strip 12 feet wide off the west side of lot 14.

In September, 1873, J. E. Thom, the original owner of the lots mentioned, conveyed lot 15 and part of lot 16 (in the block shown on the plat) to Mrs. Dinwiddie, one of defendants. That deed was duly recorded. In it occurs this language, descriptive of the subject-matter conveyed (in addition to the description of the lot 15 and part of lot 16), viz.: "also the perpetual right of way over a piece of ground, twelve feet wide, off of the west end of lot No. 14, in said Kelley's addition to the Town of Columbia, all situated in block No. 1 in said addition."

The defendant, Mrs. Dinwiddie, and her husband (her codefendant in this cause) went into possession of her lots and also of the strip of land in lot 14, shortly after receiving the deed.

So much of fact in the case is admitted. Beyond that, defendants give evidence supposed to have a

tendency to show a title to the strip of lot 14 by adverse occupancy.

On that point their testimony goes to prove that they fenced the alley, established a gate at the outlet toward the Paris gravel road, and used the strip as a cow lot, and otherwise, in connection with their other property, for more than 10 years.

Until 1887, lot 14 was vacant. It had been sometimes used by defendants as a garden or horse lot, by consent of former owners. Miss. Wright in 1879 moved into a house on lot 13 which she owned, and in the summer of 1887 she built a house on lot 14, which she had meantime purchased. Miss Wright and defendants, at joint expense, kept up the fence separating lot 14 from the alley. She was told by the agent, who pointed out lot 14 to her when she bought it, that the alley belonged to the Dinwiddies. But she also stated as a witness that they never made any claim to her in regard to the alley, though they exclusively occupied and used it during her ownership of property in that block. Her deed, however, to plaintiff in 1891 purported to convey the strip to plaintiff as part of lot 14 of the original addition.

Both of the defendants seem to have given very little publicity to their claim to exclusive title to the alley, as appears from the following passages from their testimony bearing on the vital question of the notoriety of such a claim, viz.:

"*By Mr. Dinwiddie:*    *Q.* You and your wife took possession under your deed of your property? *A.* We took possession when we moved there. I don't own any deed or claim under the deed.

"*Q.* Your wife has the deed? *A.* She don't claim it by the deed.

"*Q.* How does she claim it? *A.* She claims it by the right of peaceable possession.

Vol. 132 mo—7

"*Q*. Did you ever make this claim to anyone else? *A*. I never did have any occasion to; never thought of anything of the kind.

"*Q*. You never thought of it until you came to this trial, then you thought you would claim by something else than under your deed? *A*. Yes, sir."

"*By Mrs. Dinwiddie*:   *Q*. You bought this property in 1873 from J. E. Thom? *A*. Yes, sir.

"*Q*. And took this deed to it? *A*. Yes, sir.

"*Q*. You went in possession under this deed? *A*. Yes, sir; we took possession of it.

"*Q*. Under this deed; that is the title you got to it? *A*. I understood so.

\*        \*        \*        \*        \*        \*        \*

"*Q*. Is it not a fact that you never claimed to own it to anybody other than by your deed? *A*. Nobody ever said anything to me about it."

Plaintiff has paid all taxes on lot 14 since he bought it. There is no evidence of any payment by defendants upon that part of lot 14 now claimed by them.

When plaintiff entered into possession of lot 14, in June, 1891, he began using the strip occasionally as a passage in various ways. He built the sheds (noted on the diagram) upon lot 14 so as to have convenient access to the alley from them. But in a short time (in October, 1891), defendants interdicted plaintiff's use of the alley as an outlet to the street, and locked the gate at the north end of the alley, so that the latter could not be. longer used as such by plaintiff. Then plaintiff brought this suit to enjoin defendants from interfering with his use of that part of his own lot as a passage way, after endeavoring by negotiation with defendants to secure their consent to his continued use of the alley.

The trial court found for defendants, and rendered judgment accordingly. Plaintiff appealed after the usual steps.

Downing v. Dinwiddie.

1.   Defendants have no paper title whatever to sustain their exclusive claim to the disputed part of lot 14.   They have really much less than a paper title thereto.   They have a recorded interest in that very land, subordinate to, or in common with, the title of its owner, expressed by the part of the deed to Mrs. Dinwiddie, above quoted, conferring a perpetual right of way over the property mentioned.

That interest in the land made defendants' possession of it rightful, and not in conflict with the estate of the owner of lot 14.   In such a state of the title, defendants could not obtain an exclusive ownership of the alley strip of lot 14 under the limitation law, without, at least, clear and unequivocal expression of a holding of the property adverse to or superior to the easement they took by their deed.   *Lathrop v. Elsner* (1892) 93 Mich. 599 (53 N. W. Rep. 791).   Acts of ownership consistent with their right of way ( *Green v. Goff*, 1894, 153 Ill. 534, 39 N. E. Rep. 975) would not start the statute of limitations on its course for their benefit.   To accomplish that, they would have to bring home, to the parties affected by their new claim, notice that they asserted a higher or greater estate than the deed to Mrs. Dinwiddie conferred.   Whether more than that would be demanded of them in the circumstances we need not inquire, for we think they have failed to meet even those requirements.

We consider the acts of the defendants toward the property in question were not of such a nature as to transfer to them by adverse possession full title to that part of lot 14 which they claim.   Their own testimony above quoted shows no such notoriety of claim of that sort as would start the statute of limitations in their favor.

2.   We regard injunction as an appropriate remedy to prevent defendants from interfering with plaintiff's

right to use and enjoy the disputed portion of his lot as a passage way. That is all he asks in this case. His estate he concedes is subject to defendants' right of way across the same as granted by the Thom deed to Mrs. Dinwiddie.

The right to use a passage way, affording the only exit to the public highway from outbuildings of a town lot, is a species of property the interference with which it is very difficult, if not impossible, to adequately compensate or measure by pecuniary damages. The continued exercise of such a right is an important and valuable convenience incident to the ownership of property used for residence purposes, as is that of plaintiff here in view. The attitude assumed by defendants toward the subject of controversy indicates that their interference with plaintiff's right will be continuous; and we think there is no substantial evidence of title in defendants by adverse possession. In such circumstances, the remedy sought is available, under the law of Missouri. R. S. 1889, sec. 5510; *Glaessner v. Brewing Ass'n* (1890) 100 Mo. 508 (13 S. W. Rep. 707).

3. Plaintiff's evidence tends to show that his property was injured in rental value to the extent of $2 per month by the action of defendants in cutting off the use of the alley. So much of his damage is established, and he is entitled to recover at that rate from the time of service of process in this case to the final decree herein, as incidental to the main relief awarded.

The judgment is reversed, and the cause remanded with directions to enter another judgment in accordance with this opinion, after ascertaining the damages to which plaintiff is entitled as above indicated; the costs of the entire litigation in both courts to be borne by the defendants. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.

## ON MOTION FOR REHEARING.

PER CURIAM (BRACE, C. J., and BARCLAY, MAC-
FARLANE, and ROBINSON, JJ.).—The motion for rehear-
ing has called for a review of all the rulings announced
in the first opinion.   We adhere to them, except in
the particulars we shall point out.

The briefs in this court and the record of the trial
indicate that plaintiff's legal title to lot 14 was con-
ceded, and the evidence, we think, showed that plain-
tiff was in the enjoyment of the disputed strip, as an
alley, during several months of 1891, until defendants
interfered with his enjoyment, shortly before the bring-
ing of this suit.   Defendants' proof in the trial court
was directed toward the establishment of a right to the
exclusive use of the strip, by adverse possession.  Their
claim then and their argument in this court were alike
founded on that contention.

Oral evidence of transfers of lot 14 from the com-
mon source of title came in without objection, on that
theory.   But now, on the motion for rehearing, it is
insisted that plaintiff has not sufficiently proved his
own title to warrant a final decree in his favor.

Parties are usually held bound on appeal by the
positions they take at the trial; and after bringing a
case to judgment here on one theory, it is rather late
to open up an entirely new field of legal controversy.

If there was a total want of proof of title in plain-
tiff, the circuit judgment would necessarily be correct
and be affirmed.   But the evidence, we consider, dis-
closed plaintiff's title, though some of the links of it
were furnished by statements of witnesses which might
have been held incompetent had timely objections
been interposed.

It is too late to start such objections in this court.

As our ruling, however, on the title would be final,

in an action of this nature, we believe it proper and just to direct a new trial of the cause, in accordance with the principles herein declared, and our former decision is so modified.

The judgment is therefore reversed, the cause remanded, and the motion for rehearing overruled, with the concurrence of all the members of the first division.