(117 App. Div. 671)

HATFIELD et al. v. STRAUSS et al.

(Supreme Court, Appellate Division, First Department. February 25, 1907.)

1. MUNICIPAL CORPORATIONS—USE OF STREETS—PRIVATE RAILWAY—GREATER NEW YORK CHARTER—BOARD OF ESTIMATE AND APPORTIONMENT—POWERS.

Laws 1891, p. 3, c. 4, as amended by Laws 1905, p. 1550, c. 631, to provide for rapid transit railways in cities of over 1,000,000 inhabitants, provided (section 5) that consent of the board of estimate and apportionment and the mayor, without the consent of the common council, board of aldermen, or other board or officer of the city, should be the only conser* of local authorities required for the establishment of a route chosen by the rapid transit commissioners. Greater New York Charter, Laws 1901, p. 107, c. 466, § 242, as amended by Laws 1905, p. 1545, c. 629, provided that the board of estimate and apportionment should thereafter, except in cases where franchises, rights, or contracts should be granted or authorized pursuant to Rapid Transit Act, Laws 1891, p. 3, c. 4, and the amendment thereof, have the exclusive power on behalf of the city to grant franchises or rights involving the occupation and use of the streets and other enumerated public places within or belonging to the city for railroads, pipe, or other conduits or ways or otherwise for the transportation of persons or property or the transmission of gas, electricity, steam, light, heat, or power. Held, that the purposes so enumerated were for the benefit of and in the interest of the public at large, and that the board had no power to grant the owners of a department store a personal privilege to construct and operate a spur track in the street, to connect its store with a street railway, to be used exclusively for the transportation of its goods.

2. SAME—OBSTRUCTION OF STREET—INJUNCTION—RIGHT TO SUE.

The owner of property adjoining such department store and abutting the street at the point where such spur track was intended to be constructed, whose means of ingress and egress would be seriously interfered with

thereby, had sufficient capacity to sue to restrain the construction of such track.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1448, 1503.]

Ingraham and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Suit by Edwin F. Hatfield and others against Isidor Strauss and others. From an order vacating a preliminary injunction and denying a motion for a continuance thereof pendente lite, complainants appeal. Reversed, and motion continued. Injunction granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Masten & Nichols (Arthur H. Masten, of counsel), for appellants.
Edmond E. Wise, for respondents Strauss and others.
Theodore Connoly (Louis H. Hahle, on the brief), and William B. Ellison, Corp. Counsel, for respondent city.

CLARKE, J.   The plaintiffs are the owners of the premises No. 149 West Thirty-Fourth street, which have been used and occupied by them for many years past as a private dwelling.   The defendants Strauss, doing business under the firm name of R. H. Macy & Co., are the lessees of the premises on the northwest corner of Sixth avenue and Thirty-Fourth street, eastward of and immediately adjoining plaintiffs' property, and occupy the same for the purposes of a large department store.

Upon the application of R. H. Macy & Co., the board of estimate and apportionment of the city of New York, on the 6th of July, 1906, approved by the acting mayor on July 13, 1906, adopted a resolution, which provided in part as follows:

"That the consent of the corporation of the city of New York be and the same is hereby given to the firm of R. H. Macy & Co., doing business on Broadway, West Thirty-Fourth street and West Thirty-Fifth street, to construct, maintain and use two spur surface railroad tracks located as follows: First, a spur track to be operated by the underground electric system from the northerly surface railroad track in West Thirty-Fourth street between Broadway and Seventh avenue in the borough of Manhattan, to their store on the northerly side of West Thirty-Fourth street. * * * The consent hereby given is for the exclusive use of the grantee and shall not be assigned, either in whole or in part, or leased or sublet in any manner, nor shall any title thereto, or right, interest or property therein, pass to or vest in any other person or corporation whatsoever, either by the acts of said grantee, its successors or assigns, or by operation of law, without the consent in writing of the city of New York, acting by the board of estimate and apportionment or its successors in authority. * * * The spur tracks to be constructed in West Thirty-Fourth street shall be operated only by the underground electric system. * * * The railroad tracks constructed under this consent shall be maintained and operated solely for the purpose of the transportation of goods, wares and merchandise and for no other purpose, and especially for no purpose in connection with passenger traffic as commonly understood."

The moving papers show that the said spur railroad tracks will connect with the northerly surface railroad tracks in West Thirty-Fourth street at a point almost directly in front of the premises owned by the plaintiffs, and, ascribing the arc of a circle, will traverse that portion

of the street between the surface railroad tracks and the curb, and thence will traverse the sidewalk within about 50 feet of the east boundary line of the plaintiffs' premises for the entire distance from the curb, to the building line, and will there run into a court within Macy's building. The purpose of the construction is to permit the running of express or freight cars into Macy's store, there to be loaded exclusively with Macy's goods; the cars when loaded to be run back upon the track of the city railroad and thence transferred to the borough of the Bronx to Macy & Co.'s distributing station there.

Plaintiffs brought this action for an injunction, and are supported by affidavits of the owners of the premises known as 151, 153, 155, 157, 159, 161, 163, 165, and 167 West Thirty-Fourth street and the owners of the premises located on the northeast corner of Thirty-Fourth street and Seventh avenue; that is to say, the owners of all the property on the north side of Thirty-Fourth street from Macy's store to Seventh avenue unite in opposition to the construction of this private railroad. A preliminary injunction was granted by the Special Term, but the motion to continue the same during the pendency of the action was denied, and said injunction vacated, and from said order this appeal is taken.

What is involved in this case is a question of power. If the board of estimate and apportionment had the power to grant to R. H. Macy & Co., a private copartnership engaged in the selling of goods, the privilege to construct, maintain, and use for its exclusive use a railroad track operated by the underground electric system, for 25 feet say, in the roadway of a public street, and entirely across the 30 feet of public sidewalk, it has the power to grant a similar privilege to every owner or lessee of property in the city of New York. If an apartment house, a store or a manufactory, or a club should be located near the end of one of the long cross-town blocks of the city, and should deem it advisable for its own exclusive purposes to have a railroad connection by a spur with a north and south bound track of an existing street railroad company on the avenue at the other end of the block, the board would have the power to permit it to construct, maintain, and use said spur over the roadway of the street for 500 feet. If the board has the power to permit this private railroad spur to be constructed across the sidewalk into Thirty-Fourth street, it has the power to permit it to be constructed lengthwise with the sidewalk to connect with the avenue. If it is advantageous to R. H. Macy & Co. to have this personal and exclusive privilege, it cannot be doubted that other large department stores, of which there are very many in the city, would find it of the same advantage, and, as it cannot be presumed that R. H. Macy & Co. are any special favorites of the board of estimate and apportionment, it must, upon like application, impartially grant to all applicants a similar privilege.

While the argument of convenience and propriety is not conclusive on the question of power, yet, when a novel, and as it seems to me dangerous, innovation, is about to be inaugurated in the use of the city streets, it is important to look the question fairly in the face and see where the logic of the situation inevitably carries us. The argument ab inconvenienti, of course, cannot prevail against a settled rule of law

or construction, but in doubtful cases "argumentum ab inconvenienti plurimum valet in lege." Broom's Legal Maxims, 146.

It is conceded upon this record that the necessary procedure to obtain a franchise for a surface railroad in the public streets was not taken, but the respondents say this is not a franchise; this is not a street railroad; it is not to be used as a common carrier of passengers. It is personal, exclusive, and private, and therefore the provisions in regard to the granting of franchises to surface railroads do not apply. The respondents claim that section 242 of the Revised Charter of Greater New York (chapter 466, p. 107, of the Laws of 1901, as amended by chapter 629, p. 1545, of the Laws of 1905), grants the power.

A careful examination of the provisions of the charter, together with the rapid transit acts, discloses that, before the legislation of 1905, the board of aldermen had the power to grant from time to time to any corporation thereunto duly authorized the franchise or right to construct and operate railways in, upon, over, and along streets in the city of New York, and, wherever the consent of the local authorities was necessary to the location of the route or routes of the railways under, over, upon, through, and across any of the streets of New York, the board of aldermen was the local authority vested with the power to give such assent for the city. It is common knowledge that, such being the law, such conditions existed in the attempt to procure from said board the necessary consents in regard to large schemes of public improvements in the way of transit facilities that the Legislature was appealed to, and as a result thereof a series of laws were enacted by the Legislature of 1905, whose object and intent, by reason of alleged abuses, was to take from the board of aldermen its power over the conferring of such franchises and the giving of such consent, and to confer said power upon the board of estimate and apportionment.

Chapter 629, p. 1533, of the Laws of 1905, amended sections 17, 28, 41, 43, 44, 45, 47, 48, 50, 72, 73, 74, 75, and 242 of the Greater New York Charter, and each one of the amendments was intended to deprive the board of aldermen of said power, and to confer it upon the board of estimate and apportionment; in many instances, by a mere substitution in the statute of the board of estimate and apportionment for the board of aldermen, and in the case of section 242 by a new provision intended to cover the question. The final section 15, p. 1548, of said chapter 629, has this side note, "Application of this act," and provides that:

"This act and all the amendments hereby made to the sections thereof hereby amended shall be applicable to every grant, franchise or contract heretofore made, authorized or issued by the said board of rapid transit commissioners, but not yet consented to by the common council or board of aldermen of the city, as well as to all grants, franchises or contracts hereafter made, authorized or issued by the said board of rapid transit commissioners."

Chapter 630, p. 1548, of the Laws of 1905, further amended section 74 of the Revised Charter. Chapter 631, p. 1550, of the Laws of 1905, amended chapter 4, p. 3, of the Laws of 1891, entitled, "An act to provide for rapid transit railways in cities of over 1,000,000 inhabitants," in harmony with this new scheme, and substituted the board of esti-

mate and apportionment for the board of aldermen as being the board constituting the "local authorities" whose consent was necessary to a route .chosen by the rapid transit commissioners; the final clause of the said amended section 5 being:

"And the consent of such board of estimate and apportionment and the mayor, without the consent of the common council, board of aldermen or other board or officer of the city, shall be the only consent of local authorities required hereunder."

The purpose and design of this legislation, apparent in every line thereof,. was not to grant new, unheard of, and unknown powers to the board of estimate and apportionment, but simply to transfer to that board those which had theretofore been possessed, and alleged to have been misused, by the board of aldermen in relation to the granting of franchises and the location of routes by public service corporations, in the interest of the public.

Section 242 provides that:

"The board of estimate and apportionment shall hereafter, except in the cases where franchises, rights or contracts shall be granted or authorized pursuant to the rapid transit act, chapter 4 [page 3] of the laws of 1891, and the amendments thereof, have the exclusive power in behalf of the city to grant to persons or corporations franchises or rights or make contracts providing for or involving the occupation or use of any of the streets, avenues, highways, boulevards, concourses, driveways, bridges, tunnels, parks, parkways, waterways, docks, bulkheads, wharves, piers or public grounds or waters within or belonging to the city, whether on, under or over the surface thereof, for railroads, pipe or other conduits or ways or otherwise for the transportation of persons or property or the transmission of gas, electricity, steam, light, heat or power."

Every one of these enumerated purposes are for the benefit of, and in the interest of, the public at large. And, again, in said section, the said board is designated "as the local authority having control of such streets," etc., "whose consent is necessary," and the last paragraph of the section is:

"Hereafter no consent or approval of any such determination, conclusion, route, plan, specifications, right, franchises or contract by the board of aldermen or any department or officer of the city shall be necessary"

—referring to the consent required by the local authorities to the plans of the rapid transit commissioners.

The other provisions of law in regard to the granting of franchises must be read in connection with these amendments, and the sole result thereof, as it seems to me, is simply to transfer the powers theretofore had over such subjects from the board of aldermen to the board of estimate and apportionment, and therefore, if the permit given in this case is to be considered as given under those provisions of the amendatory acts of 1905, then a franchise or grant for a surface railroad has been given, and the provisions of law as to the granting of such franchise have not been complied with. But, say the respondents, we do not claim to have a franchise; we do not intend to act as a common carrier; we do not propose to run a surface railroad for the benefit of the people; what we have is a personal, private, and exclusive right to construct, maintain, and use a private track on a portion of the public

streets and the sidewalk thereof, vested in the city to hold as trustees for the use of all the people of the state as a public highway.

It seems to me that no power to grant such a right was ever conferred by law, or possessed by the board of aldermen or any other local authority, and hence could not be and was not transferred by this legislation from the board of aldermen to the board of estimate and apportionment, and, as an independent proposition, that no such power could be or has been created by this legislation and conferred upon the board of estimate and apportionment. The only ground that surface railroads were ever permitted to be laid in the public streets, the only authority conferred upon a corporation to occupy for the purpose of making money for itself a portion of the public streets, was that it was a legitimate street use for the benefit of all the traveling public. But the moment such a right is given for the exclusive use of a private individual, there has been a taking of public property for private use which cannot and ought not to be justified. The streets of the city of New York belonging to all the people have been subjected to many invasions for the benefit and use of private owners. Of late years it has been realized by the courts how dangerous such invasions have been, and, in Ackerman v. True, 175 N. Y. 353, 67 N. E. 629, and in McMillan v. Klaw & Erlanger, 107 App. Div. 407, 95 N. Y. Supp. 365, and in Williams v. Silverman Realty & Construction Co., 111 App. Div. 679, 97 N. Y. Supp. 945, the Court of Appeals and this court have announced the doctrine that the board of aldermen, or other local authority having control over the streets for certain purposes, had no power to permit invasions thereof for private use, and, if there was any local legislation which could be invoked as an authority in that regard, it would be unconstitutional as attempting to authorize either the taking of private property for private use or the taking of public property for private use.

So far as I have been able to find, no such invasion of the public streets for purely private purposes as in the case at bar has ever been sanctioned. In the case of Fanning v. Osborne, 102 N. Y. 441, 7 N. E. 307, a street railroad corporation made a contract with defendant granting to him the right to run freight cars over a portion of its route into his premises for his private use; defendant to pay the expense of laying the new track and keeping the same in repair. In an action to restrain such use, by an abutting property owner, held, that the facts found showed a special injury sustained by the plaintiff from the operation of the railroad which justified the interference of equity. That such use of the street was a nuisance which should be restrained, and this without regard to the question whether the defendant had a title to or interest in the soil of the street. The unanimous opinion of the court, written by Andrews, J., said:

"The right to construct and operate a street railway is a franchise which must have its source in the sovereign power. The legislative power over the subject is also subject to the limitation that the franchise must be granted for public, and not for private, purposes, or at least public consideration must enter into every valid grant of a right to appropriate a public street for railroad uses. The construction and maintenance of a street railway by any individual or association of individuals, without legislative authority, would constitute a public nuisance and subject the persons maintaining it, not only to indict-

ment, but also to a private action in favor of any person sustaining special injury. * * * It is plainly contrary to public policy that a franchise granted for public purposes should be used as a mere cover for a private enterprise."

It makes no difference in principle that in the case last cited the tracks were longer than those proposed to be laid in the case at bar. With the exception of the length of the road, the cases seem to be on all fours. In the Fanning Case, there was the right to run freight cars over a portion of its road into his premises for his private use; defendant to pay the expense of laying the new tracks and keeping the same in repair. Substitute express for freight cars, and we have the exact situation presented in the case at bar. The doctrine of this case, that the franchise must be granted for a public, and not for a private, purpose, was reasserted in Paige v. Schenectady R. R. Co., 178 N. Y., at page 115, 70 N. E. 213, citing the Fanning Case, supra.

In other jurisdictions, the proposition that streets and highways are intended for the common and equal use of all citizens, and that an appropriation of them for private individual uses is a perversion of them from their lawful purposes, and cannot be authorized, has been frequently applied to the laying down of railroads in the streets for the private use and benefit of an individual. In Glaessner v. Anheuser-Busch Brewing Association, 100 Mo. 508, 13 S. W. 707, the corporate authorities of St. Louis, by ordinance, gave to the brewing association the right to lay down and operate a single or double railroad switch from its brewery through and across public streets to the Mississippi river, about a quarter of a mile away. The plaintiff, owning a store 70 or more feet away from the place where the proposed track crossed a thoroughfare, procured an injunction against the city and the mayor. The court held that the city, under its general power to regulate the use of the streets, had no power to legalize the construction and operation of railroads therein for private purposes only.

In Gustafson v. Hamm, 56 Minn. 334, 57 N. W. 1054, 22 L. R. A. 565, an injunction was sustained against maintaining and operating a spur railroad running through the public street. It was shown that there would be an average of only one train a day, taking about one minute to cross the street. The court said:

"The city had no right or authority to grant defendant a license to construct and operate a purely private railroad upon or across a public street."

In Heath v. Des Moines R. R. Co., 61 Iowa, 11, 15 N. W. 573, the court held:

"We do not think the statute confers upon the city council authority to devote the streets or alleys to a railway track for the private benefit simply of an individual."

In State v. Trenton, 36 N. J. Law, 79, the common council of the city of Trenton passed an ordinance permitting two individuals to construct a railroad track across a public street from a canal to their land on the other side of the street. The track was to be used for the carriage of lumber from the canal to their property. The prosecutors, who were residents and landowners on said street, denied the power of the common council to pass the ordinance. The court said:

"If they [referring to the common council] can license one to build a railroad across the highway for his own exclusive benefit, of which the public

can have no user or advantage of convenience, it is difficult to perceive why they cannot empower another to place therein a structure which would more effectually impede the public passage and maintain it there during their pleasure. *. * * The right to license one necessarily implies authority to license all, and thus municipal corporations under the general power to regulate streets become the source from which franchises to favored individuals in the public ways derive their existence. Streets and highways are intended for the common and equal use of all citizens, to which end they must be regulated. An appropriation of them to private individual use from which the public derive no convenience, benefit, or accommodation is not a regulation, but a perversion, of them from their lawful purposes, and cannot be regarded as an execution of the trust imposed in the city authorities."

In Mikesell v. Durkee & Stout, 34 Kan. 509, 9 Pac. 278, the court had under consideration an injunction to restrain defendants constructing and operating a railroad in a public street in front of the plaintiff's lot in Ft. Scott, Kan. Defendants were not a corporation nor common carriers. Their object in constructing the railroad was entirely for their own individual purposes and to enable them to better carry grain, etc., to and from their elevator, to and from the Missouri Pacific Railroad, not far from the elevator. The court said:

"We think it may be laid down broadly and upon general principles that no city has any right or authority to give permission to any individual or corporation to construct or operate a purely private railroad upon any of the public streets of the city. * * * Any abutting lot owner whose property is or may be injured by it may maintain an action to perpetually enjoin such person or corporation from making such use of the street."

Upon reason and authority, therefore, I reach the conclusion that there is no power lodged in the board of estimate and apportionment, or any other local authority, to grant the permit here under consideration. I have no doubt of the plaintiffs' right to sue. The switch for the spur is in front of his property, which is next to the Macy store. The access to his property is over the sidewalk from the east, which sidewalk will be invaded by the tracks and slot of the constructed spur, and as he passes to and fro from his property he will have to keep a lookout for, and be in danger of, the cars shunted out by electricity from the building. There is evidence in the case that the proposed construction and the proposed use will seriously damage the value of his property.

In Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831, the Court of Appeals held, in an action brought to restrain the use of certain skids by the defendant across the sidewalk, that the plaintiff had a right to bring the action, although the bridge when used by the defendant was 35 feet from the plaintiff's store, and that the plaintiff suffered damage for the nuisance which was not common to other persons having occasion to use the street. From the cases cited, where, in the case of railroad tracks, the right to sue was upheld in the case of property owners abutting upon the street, or even as far away as 70 feet from the street proposed to be crossed by the railroad tracks, I think enough has been alleged to sustain the plaintiff's right of action.

It seems to me that the preliminary injunction should have been continued and made permanent during the pendency of the action. Among the papers are reports by various officers of the city in which

it is stated that this is the first instance where an application has been made for the granting of such a privilege, and in which reasons are presented on broad views of public policy why it ought not to be granted. No case has been found, and none is cited, upholding the grant. Under such circumstances, it appears to be reasonable that, before so novel, and as it seems to me dangerous, a perversion of the public streets should be permitted, the defendants should establish their rights to construct, maintain, and use this railroad solely for their private purposes in the action. The right should be settled before the road is built, not afterwards.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion to continue the injunction pendente lite is granted, with $10 costs.

PATTERSON, P. J., and SCOTT, J., concur.

INGRAHAM, J. (dissenting). In the prevailing opinion the reversal of this order is made to depend upon a lack of power in the board of estimate and apportionment to grant the defendants Macy & Co. the privilege to construct this track. I do not agree with all that is said in the prevailing opinion, but I think this order should be affirmed, on the ground that the plaintiffs are not in a position to enforce the rights of the public to restrain the defendants Macy & Co. from acting under the resolution of the board of estimate and apportionment. It is not alleged that the plaintiffs have any title to the fee of Thirty-Fourth street, or that any property right of theirs is affected by the proposed use of the street. No structure is proposed to be erected in the street, and there is no actual obstruction placed upon either the street or sidewalk. What was authorized was a use of the surface of the street, and such a use was authorized by the municipal authorities having control of the streets of the city of New York. That plaintiff has no property in the street, and that the Legislature would have power to authorize this use, is settled since the decision of the Court of Appeals in People v. Kerr, 27 N. Y. 188. And this decision was reaffirmed in Kellinger v. Forty-Second Street. etc., R. R. Co., 50 N. Y. 206, and has never since been seriously questioned. Assuming that the Legislature has not authorized the board of estimate and apportionment to grant such a right as this resolution grants to Macy & Co., the tracks would be a public nuisance; but an individual could not maintain an action to restrain its continuance, unless he had suffered special damage in addition to that common to all the inhabitants of the state from the unauthorized use of the street.

The only possible injury that could accrue to plaintiffs would be the interference with the sidewalk and roadway of the street by the construction of these rails and subway below the surface of the street. Neither the proposed tracks or subway, however, is in front of the plaintiffs' property, but is entirely in front of the property of Macy & Co. Access to the plaintiffs' property would not be at all interfered with, and it does not appear that the construction of such a track across the sidewalk would incommode any one using the sidewalk more than the construction of a pavement for carts and wagons. The plain-

tiffs, as the owners of property abutting on the street to the west of Macy & Co.'s property, would not, I think, suffer any more from this inconvenience than the rest of the public in walking along this street.

It seems to me that the case here presented is entirely different from that of Callanan et al. v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831. That case recognized the right of an abutting property owner to temporarily obstruct the streets for the removal of merchandise from his building, and cited with approval Mathews v. Kelsey, 58 Me. 56, 4 Am. Rep. 248, where the court said:

"As an incident to this right of transit, the public have a right to load and unload such vehicles (in the street or from the street) as they find it convenient to use. But in this respect each individual is restrained by the rights of others. He must do his work in such careful and prudent manner as not to interfere unreasonably with the convenience of others."

The facts of that case (Callanan v. Gilman, supra) which justified the plaintiffs in applying for an injunction was that both the plaintiffs and the defendant were extensive retail and wholesale grocers having stores near to each other on the south side of Vesey street in the city of New York; that a large portion of the plaintiffs' customers, in order to reach their stores, were obliged to pass upon the sidewalk in front of the defendant's store; that goods were taken to and from the defendant's store by means of trucks loaded in the street. The tracks were placed in the street adjoining the sidewalk, and then a bridge made of two skids planked over so as to make a plankway 3 feet wide and 15 feet long, with side pieces $3\frac{1}{2}$ inches high, was placed over the sidewalk with one end resting upon the stoop of the defendant's store and the other end upon a wooden horse outside of the sidewalk near the truck to be loaded. This bridge was elevated above the sidewalk at the inner end about 12 inches and at the outer end about 20 inches, thus entirely obstructing the sidewalk, and goods were conveyed over this bridge to and from the store. Persons wishing to pass upon the sidewalk in front of the store, when the bridge was in place, were obliged to step upon the stoop and go around that end of the bridge. The bridge was usually removed when not in use; but there was uncontradicted evidence that it was sometimes permitted to remain in position, when not in use, for 10 or 15 minutes, and that it sometimes remained in position when in use over 2 hours, and remained in position across the sidewalk from 4 to 5 hours each business day between the hours of 9 o'clock a. m., and 5 p. m., and that it obstructed the sidewalk the greater part of every business day. And it was the maintenance of this bridge which plainly obstructed the access to the plaintiff's place of business that the court held was a special injury to the plaintiffs' business which entitled them to maintain the action. It was held that the maintenance of this bridge was a nuisance, and that the facts proved special damage from the nuisance to the plaintiffs. There was proof that custom was turned away from the plaintiffs' store on account of the obstruction, and that pedestrians were turned to the north side of the street before reaching plaintiffs' store. That the plaintiffs suffered some special damage not common to persons merely using the street for passage is too obvious for reasonable dispute. In that case the court modified the injunction granted below by simply restraining the

defendant from unreasonably obstructing the sidewalk by any plankway or bridge or other like obstruction elevated above the sidewalk and reaching from said premises or from the stoop in front of the same to the roadway of said Vesey street, or from unnecessarily or unreasonably hindering or preventing the plaintiffs or their employés, servants, and customers from having the convenient use of and passage along the sidewalk of said Vesey street in front of said premises Nos. 35 and 37 Vesey street, by any like obstruction.

The facts of that case and this are so different that it seems to me that it is not an authority for the plaintiffs, but, in the modification of the judgment, rather an authority for the defendant. There is here no evidence that there will be any obstruction to this sidewalk which will interfere with the access to the plaintiffs' premises. It does not even appear that the sidewalk will become more uneven or rough or inconvenient for use than the present paved entrance. The use of the proposed tracks were expressly limited to the nighttime, so that the actual obstruction to the street will be less than the constant use of the passageway for trucks or vehicles, and every citizen of the state of New York using this sidewalk will be incommoded in the same way that the plaintiffs will be incommoded by the construction of these tracks and the subway underneath the street.

In Fanning v. Osborne et al., 102 N. Y. 441, 7 N. E. 307, the unauthorized railroad track was laid immediately in front of the plaintiff's premises. The plaintiff was the owner of the bed of the highway; the public only owning an easement for highway uses in the land embraced in the street. Here the right to the injunction was because of the unauthorized use of the plaintiff's property, and not a mere right to abate a public nuisance from which the plaintiff sustained no special damage.

The city, owning the fee of the street, has authorized its use for a special purpose. Such use will cause these plaintiffs no other or greater damage than is caused the public generally in using the street, and for that reason, according to the settled rule of law, the public, and not individuals, must abate the nuisance.

I think, therefore, the order appealed from should be affirmed.

LAUGHLIN, J., concurs.