THE STATE OF FLORIDA *ex rel.*, ATTORNEY GENERAL, *Relator*, v. S. J. HILBURN, *Respondent.*

Opinion Filed July 9, 1915.

1. Where provisions of a statute are so mutually connected with and dependant on each ‿other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent must fall · with them.

2. If any of the provisions of an act that are held to be illegal induced to any appreciable extent its passage, the entire act fails in view of the interdependence of the provisions.

3. The provision of Section 1 of Chapter 6899, attempting to authorize more than one Circuit Judge for one Judicial Circuit, having been held to be in conflict with the constitution and inoperative, and the provisions of such chapter being interdependent and the inoperative provision having manifestly been an inducement for the enactment of the other provisions, the entire act is unconstitutional and inoperative.

This is an Original Proceeding in Quo Warranto.

Judgment of ouster entered. COCKRELL and ELLIS, JJ., dissent.

*T. F. West, Attorney General,* and *C. M. Cooper,* for Relator;

*Cockrell & Cockrell, J. C. Cooper & Son, E. J. L'Engle, Axtell & Rinehart, F. P. Fleming, Carter & Mc-*

*Collum, Wm. H. Baker, Odom & Crawford, Geo. M. Powell, Kay & Doggett, Knight & Adair, Jas. E. Calkins, H. E. Merryday* and *John E. Hartridge & Son,* for Respondent.

PER CURIAM.—This quo warranto proceeding is brought to determine whether the Honorable S. J. Hilburn is entitled to hold and exercise the powers and duties of the office of Circuit Judge for the Fourth Judicial Circuit of Florida, as such judicial circuit is established under the following legislative enactment:

"An Act creating an additional judicial circuit in the State of Florida to be designated the Twelfth Judicial Circuit and providing for two additional circuit judges therefor, and defining and fixing the territorial limits and boundaries of the Fourth, Eighth and Twelfth Judicial Circuits and prescribing when said Circuit Courts shall take jurisdiction and the effect on pending cases and the time for holding the terms of court in the Fourth and Twelfth Judicial Circuits.

Be it enacted by the Legislature of the State of Florida:

Section 1.   There is hereby created and established an additional judicial circuit in the State of Florida to be known and designated the Twelfth Judicial Circuit of the State of Florida.   This additional judicial circuit shall be composed of the counties of Duval and Nassau. And for this additional judicial circuit there shall be appointed by the Governor and confirmed by the Senate two additional circuit judges other than the judge of the Circuit Court for Duval County under Section 42, of Article. V of the Florida Constitution.

Section 2.   The Fourth Judicial Circuit of the State

of Florida shall be composed of the counties of St. Johns, Clay and Putnam.

Section 3.    The Eighth Judicial Circuit of the State of Florida shall be composed of the counties of Alachua, Bradford, Levy and Baker.

Section 4.    On and after the seventh day of June, A. D. 1915, the Circuit Courts of the Fourth, Eighth and Twelfth Judicial Circuits respectively, then composed of the counties as hereinbefore set forth, shall exercise jurisdiction over their circuits respectively; provided that the judges and State attorneys of the Fourth and Eighth Judicial Circuits respectively, holding office at and before the time this act becomes a law, shall continue without change to exercise jurisdiction over their existing circuits and in the counties therein, respectively until midnight at the beginning of the seventh day of June, A. D. 1915, and, in the event said additional judges are not then appointed and qualified, until said additional judges shall have qualified.

Section 5.    The Circuit Court cases, suits and proceedings pending in the various counties   hereinbefore named shall continue pending therein, whether in one circuit or another, and no civil or criminal case, suit, cause or proceeding, in equity, at law, statutory or otherwise, and no writ, process, pleading, motion, information, presentment, indictment, order, finding, decree, judgment or sentence, shall abate, or be quashed, set aside, reversed, qualified, dismissed or defeated, or be held as error by reason of the creation, establishment or organization of the twelfth judicial circuit or of the change in the circuits or of this division or of any designation of the number of the circuit or by reason of this law or of any part of this law.

Section 6.   There shall be a state attorney for the twelfth judicial circuit who shall be appointed by the Governor and confirmed by the Senate and hold office for the term provided by the Constitution.

Section 7.   That the time for holding the terms of the Circuit Court in and for the fourth judicial circuit shall be as hereinafter fixed.   There shall be two regular terms of said court held in each county of the fourth judicial circuit, each year, to be known as the spring and fall term.   The spring term of the Circuit Court for the said fourth judicial circuit shall commence in the county of Clay on the second Monday in April, in the county of St. Johns on the second Monday in May, and in the county of Putnam on the second Monday in June.   The fall term of said court shall commence in the county of Clay on the third Monday in October, in the County of St. Johns on the third Monday in November, and in the county of Putnam on the second Monday in December.

Section 8.   There shall be four terms of the Circuit Court for the twelfth circuit for Duval County, beginning in each year on the first Tuesday after the first Monday of January, April, July and October, and any term may extend or continue into the succeeding term pursuant to rules made from time to time by the Circuit Judges or a majority of them residing in said county, and said rules may fix the period of time for the extension, and may limit the application of the extension of the expiring term to a particular case or cases or to a particular class of matters; by like rules a future date may be arbitrarily fixed as to one or more of the various classes of cases for the end of the term without regard to the beginning of a new term above indicated or the adjournment or continuance of a pending term; the first term shall begin

as soon after the organization as may be, by order of said circuit judges and without regard to the day of the week or month as above indicated.

Section 9.   There shall be two regular terms of the Circuit Court for the twelfth judicial circuit for Nassau County, in each year, the spring term to begin on the third Monday in April and the fall term to begin on the first-Monday in November.   A special term may be held pursuant to law or whenever ordered by the two circuit judges for said Circuit Court.   The circuit judge holding the older commission at the time shall preside or else direct the other circuit judge to preside; but the exercise of jurisdiction in term time or in vacation by either circuit judge shall be valid.

Section 10.   All laws and parts of laws inconsistent with this law or any part thereof be and the same is hereby repealed.

Section 11.   This law shall take effect at midnight at the beginning of the seventh day of June, A. D. 1915."

The constitutionality of the act is challenged.   In State *ex rel.* v. Butler, this day decided, it is held that the provision of the act for two circuit judges for the Twelfth Judicial Circuit conflicts with the constitutional limitation of one judge for each circuit, and that such provision is therefore inoperative.   Is the act otherwise constitutional?

The organic law contains the following provisions:

"There shall be eight Circuit Judges, who shall be appointed by the Governor and confirmed by the Senate, and who shall hold their office for six years.

The State shall be divided by the Legislature, at its first regular session after the adoption of this section, into eight judicial circuits, and one judge shall be assigned

to each circuit. Such judge shall hold at least two terms of his court in each county within his circuit every year, and at such times and places as shall be prescribed by law, and may hold special terms.

The Governor may, in his discretion, order a temporary exchange of circuits by the respective judges, or order any judge to hold one or more terms or part or parts of any term in any other circuit than that to which he is assigned. The judge shall reside in the circuit of which he is judge.

This section shall not be operative until the Legislature shall have divided this State into eight circuits, as hereinbefore provided for, and the seven circuit judges holding office at the time of such division shall continue to exercise jurisdiction over their several existing circuits as constituted at the time of such division, until the judge of the additional circuit shall have qualified. The circuit judges holding office at the time of such division shall severally continue in office until the expiration of their then existing term of office as judges of the circuits respectively in which, under such division, the county of his residence may be included; and a judge for the additional circuit shall be appointed for a term equal to the unexpired term of the other circuit judges upon such division being made. The salary of each circuit judge shall be two thousand, seven hundred and fifty dollars." (As amended, Joint Resolution 2, Acts 1901; adopted at general election, 1902.)

"No courts other than herein specified shall be established in this State, except that the Legislature may provide for the creation and establishment of such additional Judicial Circuits as may from time to time become necessary, and for the appointment by the Governor

and confirmation by the Senate of additional Circuit Judges therefor, whose terms of office and general jurisdiction shall be the same as is herein provided for the Circuit Judges herein already provided for, and may clothe any Railroad Commission with judicial powers in all matters connected with the functions of their office." (As amended, Joint Resolution 3, Acts 1909; adopted at general election, 1910.)

By section 4 of the act set out above, the jurisdiction of the judges of the then existing Fourth and Eighth Judicial Circuits, "shall continue without change," until the beginning of June 7th, 1915, and in the event the additional judges to be appointed under section one of the act for the Twelfth Judicial Circuit "are not then (June 7, 1915,) appointed and qualified, until said additional judges shall have qualified." As two Circuit Judges for the Twelfth Circuit cannot legally qualify, the jurisdiction of the judges of the Fourth and Eighth Judicial Circuits, by the terms of the statute, is to "continue without change;" and the courts are not authorized by construction or elimination to extend the terms or scope of the act or cause results not intended by the lawmakers. See State ex rel. Rolston v. Chicago, B. & Q. R. Co., 246 Mo. 512, 152 S. W. Rep. 28; State v. Patterson, 50 Fla. 127, 39 South. Rep. 398; Secs. 296-306 Sutherland's Stat. Con.

Where provisions of a statute "are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions, which

are thus dependent must fall with them." State *ex rel.* v. Starke, 18 Fla., 255; Warren v. Mayor, &c. of Charlestown, 2 Gray (Mass.) 84. If any of the provisions of the act that are held to be illegal induced to any appreciable extent its passage, the entire act fails in view of the interdependence of the provisions. See State *ex rel.* Carnell v. Poynter, 59 Neb. 417, 81 N. W. Rep. 431; State *ex rel.* v. Stark, *supra;* Webster v. Powell, 36 Fla. 703, 18 South. Rep. 441; State *ex rel.* Clyatt v. Hocker, 39 Fla. 477, 22 South. Rep. 721; State *ex rel.* Bours v. L'Engle, 40 Fla. 392, 24 South. Rep. 539; Davidson v. Hine, 151 Mich. 294, 115 N. W. Rep. 246; Johnson v. State, 59 N. J. L. 535, 37 Atl. Rep. 949; Riccio v. Hoboken, 69 N. J. L. 649, 55 Atl. Rep. 1109; State *ex rel.* Gibson v. Friedley, 135 Ind. 119, 34 N. E. Rep. 872; Rathbone v. Wirth, 150 N. Y. 459, 45 N. E. Rep. 15; Hanson v. Krehbiel, 68 Kan. 670, 75 Pac. Rep. 1041; Low v. Rees Printing Co., 41 Neb. 127, 59 N. W. Rep. 362; Jones v. City of Memphis, 101 Tenn. 188, 47 S. W. Rep. 138; Skagit County v. Stiles, 10 Wash. 388, 39 Pac. Rep. 116; People *ex rel.* Townsend v. Porter, 90 N. W. 68; 6. R. C. L. Secs. 123, 127, 132.

If the provisions of the act relating to the several judicial circuits were not interdependent, or if each were not an inducement for the enactment of the others, they would doubtless have been expressed in terms not so inter-related, or else put into separate acts.

Because of the invalid provision for two Circuit Judges for the Twelfth Judicial Circuit, as this day adjudicated in State *ex rel.* v. Butler, and because of the manifest interdependence of its provisions, the entire act is unconstitutional and inoperative. The Twelfth Judicial Circuit is not legally established and two Circuit Judges for such

VOL. 70, JUNE TERM, 1915.     63

State ex rel. West v. Hilburn.—Dissenting Opinion.

Judicial Circuit cannot legally qualify, therefore by the terms of Section 4 of the Act, the official status and jurisdiction of the judges of the then existing Fourth and Eighth Judicial Circuits remain, and such Judges "continue without change to exercise jurisdiction over their existing circuits and in the counties thereof." The Legislature could not have contemplated a judge with no duties to perform. Consequently the appointment of the respondent as Judge of the Fourth Judicial Circuit is unauthorized. To hold otherwise would be to extend the statute beyond its terms and manifest intent, and would result in judicial legislation.

Let a judgment of ouster be entered.

TAYLOR, C. J., and SHACKLEFORD, and WHITFIELD, JJ., concur.

ELLIS, J., (*dissenting.*)—An information in the nature of *quo warranto*, was filed in this court, in the name of the State of Florida, on the relation of the Attorney General, for the purpose of testing the right of Samuel J. Hilburn, to use, exercise, enjoy and perform the franchise, functions, jurisdiction and powers of Circuit Judge of the Fourth Judicial Circuit of the State of Florida.

The information is in the following words, omitting venue and signatures:

"In the name and by the authority of the State of Florida, Thomas F. West, as the Attorney General of the State of Florida, who sues for the State of Florida and for the people of the State of Florida in this behalf, comes here before the Supreme Court of the State of Florida, on this 14th day of June, during the June Term

of said court in the year 1915, and while said court is
sitting, and hereby gives the said court to understand
and be informed that Samuel J. Hilburn, a resident and
citizen of and in said State and the County of Putnam, now
and for some time last past, has used, enjoyed, exercised
and performed, and still does use, enjoy, exercise and
perform, all without warrant or authority of law, and in
violation of the Constitution of the State of Florida, the
franchise, functions, jurisdiction and powers of Circuit
Judge of the Fourth Judicial Circuit of the State of Flor-
ida, as hereinafter set forth, and said office and the
franchise, functions, jurisdiction and powers thereof the
said S. J. Hilburn during the time aforesaid usurped and
still does usurp, within the State of Florida and within
the jurisdiction of this court, upon the State aforesaid
and the people of the State aforesaid to their great dam-
age and prejudice.   And the Attorney General aforesaid
of the State aforesaid, further gives the Court to under-
stand and be informed as follows:

1.    That it is claimed or pretended by the said S. J.
Hilburn, that he is such Circuit Judge of the Fourth Ju-
dicial Circuit of the State of Florida, by appointment of
the Governor of said State, under and by virtue of an
Act of the Legislature of the State of Florida, which Act
is as follows:

An Act creating an additional judicial circuit in the
State of Florida to be designated the Twelfth Judicial
Circuit and providing for two additional circuit judges
therefor, and defining and fixing the territorial limits and
boundaries of the Fourth, Eighth and Twelfth Judicial
Circuits and prescribing when said Circuit Courts shall
take jurisdiction and the effect on pending cases and the

time for holding the terms of court in the Fourth and Twelfth Judicial Circuits.

Be it enacted by the Legislature of the State of Florida:

Section 1.    There is hereby created and established an additional judicial circuit in the State of Florida to be known and designated the Twelfth Judicial Circuit of the State of Florida.    This additional judicial circuit shall be composed of the counties of Duval and Nassau. And for this additional judicial circuit there shall be appointed by the Governor and confirmed by the Senate two additional circuit judges other than the judge of the Circuit Court for Duval County under Section 42, Article V, of the Florida Constitution.

Section 2.    The Fourth Judicial Circuit of the State of Florida shall be composed of the counties of St. Johns, Clay and Putnam.

Section 3.    The Eighth Judicial Circuit of the State of Florida shall be composed of the counties of Alachua, Bradford, Levy and Baker.

Section 4.    On and after the seventh day of June, A. D. 1915, the Circuit Courts of the Fourth. Eighth and Twelfth Judicial Circuits respectively, then composed of the counties as hereinbefore set forth, shall exercise jurisdiction over their circuits respectively; provided that the judges and State attorneys of the Fourth and Eighth Judicial Circuits respectively, holding office at and before the time this Act becomes a law, shall continue without change to exercise jurisdiction over their existing circuits and in the counties therein, respectively until midnight at the beginning of the seventh day of June, A. D. 1915, and, in the event said additional judges are not then ap-

pointed and qualified, until said additional judges shall have qualified.

Section 5. The Circuit Court cases, suits and proceedings, pending in the various counties hereinbefore named shall continue pending therein, whether in one circuit or another, and no civil or criminal case, suit, cause or proceeding, in equity, at law, statutory or otherwise, and no writ, process, pleading, motion, information, presentment, indictment, order, finding, decree, judgment or sentence, shall abate, or be quashed, set aside, reversed, qualified, dismissed or defeated, or be held as error by reason of the creation, establishment or organization of the twelfth judicial circuit or of the change in the circuits or of this division or of any designation of the number of the circuit or by reason of this law or of any part of this law.

Section 6. There shall be a State attorney for the twelfth judicial circuit who shall be appointed by the Governor and confirmed by the Senate and hold office for the term provided by the Constitution.

Section 7. That the time for holding the terms of the Circuit Court in and for the fourth judicial circuit shall be as hereinafter fixed. There shall be two regular terms of said court held in each county of the fourth judicial circuit, each year, to be known as the spring and fall term. The spring term of the Circuit Court for the said fourth judicial circuit shall commence in the county of Clay on the second Monday in April, in the county of St. Johns on the second Monday in May, and in the county of Putnam on the second Monday in June. The fall term of said court shall commence in the county of Clay on the third Monday in October, in the county of

## VOL. 70, JUNE TERM, 1915.    67

State ex rel. West v. Hilburn.—Dissenting Opinion.

St. Johns on the third Monday in November, and in the county of Putnam on the second Monday in December.

Section 8. There shall be four terms of the Circuit Court for the twelfth circuit for Duval County beginning in each year on the first Tuesday after the first Monday of January, April, July and October, and any term may extend or continue into the succeeding term pursuant to rules made from time to time by the Circuit Judges or a majority of them residing in said County, and said rules may fix the period of time for the extension, and may limit the application of the extension of the expiring term to a particular case or cases or to a particular class of matters; by like rules a future date may be arbitrarily fixed as to one or more of the various classes of cases for the end of the term without regard to the beginning of a new term above indicated or the adjournment or continuance of a pending term; the first term shall begin as soon after the organization as may be, by order of said Circuit Judges and without regard to the day of the week or month a sabove indicated.

Section 9. There shall be two regular terms of the Circuit Court for the twelfth judicial circuit for Nassau county, in each year, the spring term to begin on the third Monday in April, and the fall term to begin on the first Monday in November. A special term may be held pursuant to law or whenever ordered by the two circuit judges for said Circuit Court. The circuit judge holding the older commission at the time shall preside or else direct the other circuit judge to preside; but the exercise of jurisdiction in term time or in vacation by either circuit judge shall be valid.

Section 10. All laws and parts of laws inconsistent

with this law or any part thereof be and the same is hereby repealed.

Section 11.    This law shall take effect at midnight at the beginning of the seventh day of June, A. D. 1915.

That on, to-wit, the 7th day of June, A. D. 1915, the said S. J. Hilburn was appointed by the Governor of the State of Florida, and confirmed by the Senate of the State of Florida, to be Circuit Judge of the Fourth Judicial Circuit of said State of Florida, and subsequently commissioned by the Governor of the State of Florida as such Judge for the term beginning on the 14th day of June, A. D. 1915, until the 2nd day of July, A. D. 1917. That at the time that the said S. J. Hilburn was so appointed and commissioned Circuit Judge for the Fourth Judicial Circuit of the State of Florida, George Couper Gibbs was, and still is, Circuit Judge for said Fourth Judicial Circuit, unless the provisions of said alleged Act of the Legislature creating such twelfth Judicial Circuit then were, and are, constitutional and not contrary to the Constitution of the State of Florida.    That the said attempted appointment, confirmation and commissioning of the said S. J. Hilburn as Circuit Judge of the Fourth Judicial Circuit of the State of Florida was contrary to and in violation of the Constitution of the State of Florida, and of the provisions thereof, and is illegal and void, and of no effect, and the exercise and use by the said S. J. Hilburn of the office, functions and powers of Circuit Judge of the Fourth Judicial Circuit of the State of Florida, is without warrant of law, in that said alleged Act above set forth as shown by its face, is unconstitutional and void.

2.    The Attorney General aforesaid of the State

aforesaid, further gives the Court to understand and be informed as follows:

That said alleged Act of the Legislature hereinbefore quoted at length is not in any respect, nor in all respects and parts a law of the State of Florida; that is to say,

(a)   Prior to the date said Act went into effect, and long theretofore, George Couper Gibbs was and had been the duly qualified, commissioned and acting Circuit Judge for the Fourth Judicial Circuit of the State of Florida, composed of the counties of Nassau, Duval, St. Johns and Clay Counties, and then and theretofore resided in the county of Duval, and still resides in said county of Duval, and said Gibbs has continued, and is now the duly qualified and commissioned Circuit Judge residing in Duval County, Florida; and that Daniel A. Simmons is and for two years last past has been the duly qualified, commissioned and acting Circuit Judge for Duval County, Florida, under Section 42 of Article 5, of the Florida Constitution; and that James T. Wills is now, and for many years has been the duly commissioned, qualified, and acting Circuit Judge for the Eighth Judicial Circuit of the State of Florida, residing in Bradford County, and that said Eighth Judicial Circuit next prior to the passage of said alleged Act, and ever since the creation of the Eighth Judicial Circuit of the State of Florida, consisted of the counties of Baker, Bradford, Putnam, Alachua and Levy counties; and that J. Turner Butler has been duly appointed and commissioned by the Governor of the State of Florida under date of the ninth day of June, A. D. 1915, a judge of the Circuit Court for the Twelfth Judicial Circuit of the State of Florida, residing in Duval County, Florida, in the event the said alleged Act in that

behalf or in that part is a constitutional Act of the Legislature of the State of Florida; but so it is that, in the event it should appear that said alleged Act is in any wise or in any part valid or constitutional, it is not valid or constitutional in so far as and to the extent it is relied on to validate the claim of said S. J. Hilburn to hold, use, exercise, enjoy or perform the office of Circuit Judge for the Fourth Judicial Circuit of the State of Florida.

3.    And the Attorney General aforesaid of the State aforesaid, further gives the Court to understand and be informed as follows:

That the said provisions of the said alleged Act of the Legislature of the State of Florida, hereinbefore mentioned and quoted, providing for two additional Circuit Judges for the Twelfth Judicial Circuit of the State of Florida aforesaid, are such a material portion of said Act, and are so connected with the other provisions of said Act, and so permeate the said Act, both in the title and the body thereof, and so affect the provisions and manifest purposes and intent of said Act, that said entire alleged Act of the Legislature is contrary to and in violation of the Constitution of the State of Florida, and the said attempted appointment and commissioning of the said Samuel J. Hilburn as Circuit Judge of the Fourth Judicial Circuit of the State of Florida, was contrary to and in violation of the Constitution of the State of Florida, and of the provisions thereof, and is illegal and void, and of no effect, and the exercise and use by the said S. J. Hilburn of the office, functions and powers of Circuit Judge of the Fourth Judicial Circuit of the State of Florida, is without warrant of law.

4.    And the Attorney General aforesaid, of the State

aforesaid, further gives the Court to understand and be informed as follows:

That said alleged Act of the Legislature of the State of Florida, hereinbefore mentioned and quoted, is contrary to and in violation of the Constitution of the State of Florida, in that the said alleged Act, in Section 8 and Section 9 thereof, contains provisions regulating the jurisdiction and duties of the Circuit Judges for said Twelfth Judicial Circuit and regulating the practice of a Court of Justice, not a Municipal Court, to-wit, the Circuit Court for the Twelfth Judicial Circuit of the State of Florida, for Duval County, and the Circuit Court for the Twelfth Judicial Circuit of the State of Florida, for Nassau County, respectively, and said Act is a local law, and is not a law of general and uniform operation throughout the State of Florida, and is in violation of and is contrary to Section 20 and Section 21, of Article 3 of the Constitution of the State of Florida. That said alleged act is also unconstitutional because the said provisions thereof concerning the jurisdiction and duties of the Circuit Judges for said Twelfth Judicial Circuit and regulating the practice of said courts, is not expressed in the title of said Act, and is a different and distinct subject from that of creating the Twelfth Judicial Circuit and defining and fixing the territorial limits and boundaries of the Fourth and Twelfth Circuits, and prescribing when said Circuit Courts shall take jurisdiction and the effect on pending cases and the times for holding the terms of Court in the Fourth and Twelfth Judicial Circuits, and matters properly connected therewith, and is in violation of Section 16 of Article 3 of the Constitution of the State of Florida.

5. And the Attorney General aforesaid, of the State

aforesaid, further gives the Court to understand and be informed as follows:

A bill called Senate Bill 282 with the title and eleven sections was introduced in the Senate of the State of Florida on the 21st day of April, A. D. 1915, when the Legislature of said State was duly convened and acting in regular session at Tallahassee, in the words of said Act of the Legislature hereinbefore quoted and said bill is alleged to have become an act of the Legislature of the State of Florida, notwithstanding the Governor's objection, by having passed both houses by a two-thirds vote of the members, during said session of the Legislature aforesaid, and is alleged to have become a law of said State when so passed and certified to the Secretary of State of the State of Florida on the 18th day of May, 1915, but the fact is that said bill failed to become a law in that, among other constitutional defects, as exhibited by the journal of the two houses and the original enrollment in the custody of the Secretary of State of the State of Florida, when on Saturday the 15th day of May, A. D. 1915, the Governor's message returning said bill without his approval was read to the House of Representatives, the question was put by the Speaker, 'Shall the Act pass, the objections of the Governor to the contrary notwithstanding?'    And the vote thereon as set out in the journal was 32 yeas and 25 nays, giving the name of each member present and how he voted; and on Monday next following, May 17th, Mr. Dancy, one of the 25 members voting in the negative, moved the rules be waived for the purpose of moving a reconsideration of the vote by which the House sustained the Governor's

veto as aforesaid, which motion was agreed to by a two-thirds vote.

Mr. Dancy moved that the House reconsider the vote which the Governor's veto was sustained on—

An Act creating an additional Judicial Circuit in the State of Florida, to be designated the Twelfth Judicial Circuit, and providing for two additional Circuit Judges therefor, and defining and fixing the territorial limits and boundaries of the Fourth, Eighth, and Twelfth Judicial Circuits, and prescribing when said Circuit Courts shall take jurisdiction, and the effect on pending cases, and the time for holding the terms of court in the Fourth and Twelfth Judicial Circuits.

The same having been Senate Bill No. 282.

Mr. Lewis, another member of the House who voted in the negative, made the point of order that it was out of order to reconsider the vote by which the veto of the Governor was sustained.

Which point was overruled by the Speaker.

Mr. Dancy moved that the rules be further waived and that the motion to reconsider be taken up and considered at this time.

Which was agreed to by a two-thirds vote.

The question then recurred upon the motion to reconsider the vote by which the house sustained the Governor's veto on Senate Bill No. 282.

Which was agreed to by a two-thirds vote.

The question then recurred upon the question, 'Shall the Bill pass, the veto of the Governor to the contrary notwithstanding?'

Mr. Lewis made the point of order that it was out of order to reconsider the vote by which the veto of the Gov-

ernor was sustained, which point was overruled by the Speaker; and that, thereupon, on said Monday, upon the call of the roll of the House upon the question above quoted as set out in the Journal fifty-one members of the House as named in the Journal voted yea, and ten members of the House, as named in the Journal, voted no, and there thus being more than two-thirds of the total membership of the House voting in the affirmative, the Speaker announced that said Act, having received the necessary two-thirds vote, passed, the Governor's objections thereto notwithstanding; but, so it is, because of the fact that less than two-thirds of the members present voted in favor of the passage of said bill at the only time when such voting was within the purview of the constitution, said bill failed to become a law.

6.    And the Attorney General aforesaid, of the State aforesaid, further gives the Court to understand and be informed as follows:

Said Bill or Act quoted at length, originally called Senate Bill 282, even if it were in due season and in due form passed and enacted, yet it is not a law of the State of Florida, in that in its body it fails to comply with Section 16 of Article III of the Florida Constitution in that it does not 'embrace but one subject and matter properly connected therewith.'

And, so it is, the Attorney General of the State of Florida does give this Court to understand and be informed that said S. J. Hilburn, without warrant or authority of law, and in violation of the Constitution of the State of Florida, has usurped and still does without warrant so usurp the said franchise, functions, jurisdiction and powers of the office of Circuit Judge as aforesaid.

to the great damage and injury of the State of Florida and of the people of the State of Florida.

Whereupon, the said Thomas F. West, as the Attorney General of the State of Florida, for the said State, and in the name and by the authority of the said State, prays the consideration of the Supreme Court of the State of Florida, in the premises and due process of law to the said S. J. Hilburn in this behalf to answer to the State of Florida by what warrant of authority he claims to use, exercise, enjoy and perform the franchise, functions, jurisdiction and powers of Circuit Judge aforesaid."

To this information respondent interposed a demurrer. So that the question of the validity of the act copied in the petition is presented to this court for determination.

It is contended on behalf of the Relator that the act of the Legislature referred to is invalid because:

1st. The clause therein providing for two additional Circuit Judges for the Twelfth Judicial Circuit of the State of Florida is in violation of the Constitution of the State of Florida, and that such provision so permeates the entire act both in its body and title that the act is void in its entirety.

2nd. That Sections 8 and 9 of the Act make it a local law and obnoxious to the provisions of Sections 20 and 21 of Article III of the State Constitution.

3rd. That the provisions of Sections 8 and 9 of the Act concerning the jurisdiction and duties of the Circuit Judges for the Twelfth Judicial Circuit and regulating the practice of the said courts is not expressed in the title of the Act and is a different and distinct subject from that named in the title, which fault renders the Act void because of the provisions of Section 16 of Article III of the Constitution of the State, and

4th. That the Act having passed both Houses of the Legislature but failing to receive the approval of the Governor, was returned by him with his objections thereto, and the bill having on a vote taken in the House of Representatives failed to pass over the Governor's objections, the House of Representatives could not upon a reconsideration of that vote pass the bill notwithstanding the Governor's objections.

Whether the Legislature has power under our Constitution to provide for the creation and establishment of an additional Judicial Circuit and for the appointment by the Governor and confirmation by the Senate of two Circuit Judges therefor is a question, which depends for its solution upon the absence from the Constitution of express limitations upon such power or limitations necessarily implied from language used. "No matter from what standpoint the assault upon the Act may be made, it is a well settled and cardinal rule that nothing but a clear violation of the Constitution will justify the Courts in overruling the legislative will; and when there is reasonable doubt as to the constitutionality of an Act it must be resolved in favor of the Act." See Cooley's Const. Lim. Chap. 7; Cotton v. County Commissioners of Leon County, 6 Fla. 610; State ex rel., Turner v. Hocker, 36 Fla. 358, 18 South. Rep. 767; Webster v. Powell, 36 Fla. 703, 18 South. Rep. 441; State ex rel. Attorney General v. Burns, 38 Fla. 367, 21 South. Rep. 290; State ex rel., Andreu v. Canfield, 40 Fla. 36, 23 South. Rep. 591; State ex rel., Lamar v. Jacksonville Terminal Co., 41 Fla. 377, 27 South. Rep. 225; State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929. "It is a recognized principle of constitutional law that where limitations have not been imposed by the constitution upon legislative power,

that power is practically unlimited and covers the whole range of legitimate legislation." Inhabitants of Bayville Village Corp. v. Inhabitants of Boothbay Harbor, 110 Me. 46, 85 Atl. Rep. 300; Lommen v. Minneapolis Gas Light Co., 65 Minn. 196, 68 N. W. Rep. 53; Commonwealth v. Herr; 229 Pa. St. 132, 78 Atl. Rep. 68; Beach v. Bradstreet, 85 Conn. 344, 82 Atl. Rep. 1030; Sharpless v. Mayor &c. of Philadelphia, 21 Pa. St. 147; Jordan v. Evansville, 163 Ind. 512, 72 N. E. Rep. 544. The presumption is that language has been employed with sufficient precision to convey the intent. Cooley's Const. Lim. (6th ed.) 72. The people who adopted the constitution must be understood to have employed words in their natural sense and to have intended what they have said. Caro v. Caro, 45 Fla. 203, 34 South. Rep. 309; Gibbons v. Ogden, 9 Wheat. (U. S.) 1; State of South Carolina v. United States, 199 U. S. 437, 26 Supt. Ct. Rep. 110; Miller v. Dunn, 72 Cal. 462, 14 Pac. Rep. 27; Powell v. Spackman, 7 Idaho, 692, 65 Pac. Rep. 503; State ex rel. Childs v. Sutton, 63 Minn. 147, 65 N. W. Rep. 262; State ex rel. Summerfield v. Clarke, 21 Nev. 333, 31 Pac. Rep. 545. A State Legislature does not act under enumerated or granted powers. The constitution in so far as it relates to the legislative department does not grant powers, but limits them. And it has been said that the governmental power to establish courts and to define their jurisdiction is legislative in its character, belongs to the general assembly and is limited only by the constitution. State ex rel. Dunham v. Nixon, 132 Mo. 98, 133 S. W. Rep. 336; Brown on Jurisdiction, section 12. A constitutional provision that the judicial power shall be vested in certain courts therein enumerated prevents the

legislature from establishing other courts different in kind. Knickerbocker v. People, 102 Ill. 218; State *ex rel.* Haughey v. Ryan, 182 Mo. 349, 81 S. W. Rep. 435; State *ex rel.* Board of Education of St. Louis v. Nast, 209 Mo. 708, 108 S. W. Rep. 563; McCurdy v. Smith, 107 Va. 757, 60 S. E. Rep. 78. But a constitutional provision vesting the judicial power in certain enumerated courts and in such other courts as may be established by law is not a restraint upon the Legislature from establishing such other courts as it may deem necessary. Clark v. Black, 136 Ga. 813, 72 S. E. Rep. 251; Morris v. Bunyan, 58 Kan. 210, 48 Pac. Rep. 864; Commonwealth v. Hipples, 69 Pa. St. 9; Gottschall v. Campbell, 234 Pa. St. 347, 83 Atl. Rep. 286; Burks v. Walker, 25 Okl. 353, 109 Pac. Rep. 544; Woods v. McCay, 144 Ind. 316, 43 N. E. Rep. 269; Swartz v. Board of Commissioners of Lake County 158 Ind. 141, 63 N. E. Rep. 31; Board of Commissioners of Elkhart County v. Albright, 168 Ind. 564, 81 N. E. Rep. 578; Mill v. Brown, 31 Utah, 473, 88 Pac. Rep. 609.

We think that text writers and courts, publicists and people agree that State Constitutions do not confer or grant legislative power. That power exists in the people to be exercised by them through the governmental agency named in the constitution upon the organization of a State and when the instrumentalities through which that part of sovereign power is to be exercised is created, that power may be exercised practically without limit within its legitimate range or scope. In undertaking to determine therefore whether a particular exercise of legislative will is valid, we must look to the constitutions, Federal and State, for restrictions upon that particular exercise

of power.   See State *ex rel.* Lamar v. Jacksonville Terminal Co., 41 Fla. 363, 27 South. Rep. 221.

In the case above cited it was said by this court speaking through Judge CARTER, "That under constitutions like ours the legislative power of the State is vested in the legislative department full and complete, subject only to the limitations and restrictions contained in the constitution or in the Constitution of the United States.   Language in a State constitution therefore dealing with the exercise of legislative power, either authorizing or directing it, is not to be construed as a grant of power, but rather as the declaration of a power that already exists.   Affirmative words in such connection, therefore, do not necessarily imply a restriction of power upon legislative action on kindred subjects.   Chapman v. Reddick, 41 Fla. 120, 25 South. Rep. 673.   See State *ex rel.* v. Gerdink, 173 Ind. 245, 90 N. E. Rep. 70.   It was upon this principle that Section 30 of Article XVI of the constitution, investing the Legislature with full power to pass laws for the correction of abuses and to prevent unselfish discrimination and excessive charges by persons and corporations engaged as Common Carriers in transporting property, etc., "and shall provide for enforcing such laws by adequate penalties of forfeitures" did not forbid the use of mandamus and other remedies for enforcing duties imposed by laws passed to accomplish the purposes specified in the Act then under consideration.   State *ex rel.* Lamar v. Jacksonville Terminal Co. *supra.*

There is another principle of constitutional construction that should be kept in mind in considering this question, *viz.*: Effect should be given to every word and part of the constitution unless some clear reason exists to the

contrary. No portion of the fundamental law should be treated as surplusage. Crawford v. Gilchrist, 64 Fla. 41, 59 South. Rep. 963; Hallinger v. Davis, 146 U. S. 314, 13 Sup. Ct. Rep. 105. No construction should be placed on the constitution that renders any provision meaningless or inoperative if it can be avoided. State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969; Tuttle v. National Bank of Republic, 161 Ill. 497, 44 N. E. Rep. 984; State ex rel. Crow v. Hostetter, 137 Mo. 636, 39 S. W. Rep. 270. Where a constitution is amended and repugnancy exists between the amendment and the original constitution the amendment controls. Board of Public Instruction of Polk County v. Board of Commissioners of Polk County, 58 Fla. 391, 50 South. Rep. 574.

Section 1 of Article V of the State Constitution as amended in 1914 is as follows: "Section 1. The judicial power of the State shall be vested in a Supreme Court, Circuit Courts, Court of Record of Escambia County, Criminal Courts, County Courts, County Judges and Justices of the Peace and such other courts or Commissions as the Legislature may from time to time ordain and establish. The Legislature may prescribe the compensation of the Justices and Judges of the several courts, but no court heretofore established under the constitution and laws of Florida shall be hereby abolished."

Before the amendment the Section was as follows: "Section 1. The judicial power of the State shall be vested in a Supreme Court, Circuit Courts, Criminal Courts, County Courts, County Judges and Justices of the Peace."

The power of the Legislature to bring into existence by legislative enactment, under the section as it originally existed unaffected by other portions of the Constitution

was limited only by the description or character of courts specified in the Section. While under the amended Section there is no limitation whatever as to the creation and establishment of "Courts or Commissions." The word "Commissions" in this Section is one of doubtful meaning and the interpretation which is to be placed upon it should be controlled by the position it occupies in the Section and the words with which it is associated. The meaning with which the identical word is used in other parts of the constitution could not be the same with which it is used in this connection, for where it is used in other parts of the constitution it carries the meaning of a writing or document which constitutes the evidence of one's authority to perform the duties of a public officer. In these days of numerous legislative and administrative agencies, public service commissions and bureaux all exercising, and some being invested with quasi judicial power the word may bear that significance as well as the one contended for by Respondent, although if it had been the purpose of the people in adopting the amendment to limit the meaning of the word to Public Service Commissions or bodies with quasi judicial power, they would probably have used the word in amending Section 35 where it is provided that the Legislature may give to the Railroad Commission judicial power in matters connected with the functions of their office, and not placed it in the section which vests the judicial power of the State in certain courts. The use of the word in such close connection with the words "Courts," "Justices" and "Judges" in a section of the Constitution declaring the judicial power of the State to be vested in certain courts named and such other "Courts or Commissions" as the Legislature may ordain and establish inclines us very strongly to the view that the word

6

was used in the sense contended for by Respondent's counsel. As is very clearly shown by counsel the word had at common law a clear and definite meaning when used in connection with certain common law courts, as the Court of King's Bench, which is the prototype of our Circuit Courts.. *Ex parte* Henderson, 6 Fla. 279. The word as thus used is of narrower meaning than the word "Courts" or "Judges." A judge is only one of the constituent permanent elements of a court, while a "Commissioner" as the word was used at common law in connection with the courts carried the idea of temporary authority or power. It was the King in whom at common law the judicial power of the realm was vested, and where he was there justice was administered, hence Coke's definition of a court, as being a place where justice is administered. The King delegated the judicial power to his judges and commissions. But the judicial power under our system of government is in the people who in their writen constitutions declare where that power is or may be vested. There is nothing incongruous in the idea that in cases of public necessity, extraordinary development of business and increased growth of the State, provision may be made by the Legislature for Circuit Court or other Court Commissions possessing judicial power temporarily to exercise the functions of judges to the end that a congested docket in a county or any part of the State may be relieved, and thus provide for the administration of justice without delay. If there is nothing in the constitution expressly or by strong implication precluding the exercise of this power by the Legislature, may the courts read such inhibition into the instrument? However dear to the hearts of some of us may be the old regime under which we have lived since 1868, we must remember that

the question is one of the people's power, and not one of sentiment. We have nothing to do with the wisdom or expediency of such a power existing in the Legislature, we are concerned only with the question of whether in the absence of constitutional inhibition it may be exercised. It may be insisted, as it was, that the people might be, through legislation, subjected to a multiplicity of burdens in the matter of taxation, and subjected to confusion in the multiplicity of courts and judges if such power existed in the Legislature, but does not such argument go to expediency? And may we not just as well declare an act void because in our judgment it is unwise? The exercise of the power is left to the wisdom of the Legislature and when it enacts a law which unnecessarily imposes burdens upon the people, the remedy is with them and not with the courts; the courts cannot substitute their judgment for, that of the legislative branch in a matter which lies within the legitimate scope of the latter's power.

The Constitution before Section one of Article V was amended contained other sections which it is contended placed restriction upon the Legislature from creating more Judicial Circuits and more Circuit Judges than were specifically mentioned in that instrument.

Section 8, which provides as follows: "There shall be seven Circuit Judges who shall be appointed by the Governor and confirmed by the Senate and who shall hold their office for six years. The State shall be divided into seven Judicial Circuits, and one Judge shall be assigned to each Circuit. Such Judge shall hold at least two terms of his court in each county within his Circuit every year and at such times and places as shall be prescribed by law, and may hold special terms. The Governor may, in his discretion, order a temporary exchange of Circuits by the

respective Judges, or order any Judge to hold one or more
terms or parts of terms in any other Circuit than that to
which he is assigned.   The Judge shall reside in the Cir-
cuit of which he is Judge.   Successors to the Judges of
the Circuit Courts in office at the ratification of this Con-
stitution shall be appointed and confirmed at the first ses-
sion of the Legislature after such ratification," and Sec-
tion 10 of the same Article which defined by counties the
Judicial Circuits of the State "until otherwise defined by
the Legislature."   But these are affirmative words and
may so far as the provisions concerning seven Circuit
Judges and their appointment by the Governor and the
division of the State into seven Judicial Circuits and the
assignment of one Judge to each Circuit, be self-execut-
ing, but whether they imply an inhibition upon the Legis-
lature from establishing other Circuit Courts than therein
specified need not be determined because Section 35 pro-
vided that inhibition in express words: "No courts other
than herein specified shall be established in this State."
State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47
South. Rep. 969, 32 L. R. A. (N. S.) 639, text 657.
This section must be taken to mean that the Legislature
was prevented from establishing other courts of the kind
specified in the constitution, because if the constitutional
provision that the judicial power shall be vested in cer-
tain courts therein enumerated, prevents the Legislature
from establishing other kinds of courts, Section 35 would
have been superfluous and unnecessary if it did not mean
that courts of the same kind as specified were prohibited.
This was evidently the interpretation placed upon Section
35 by the people who in 1902 adopted the following
amendment:   "Section 8.   There shall be eight Circuit

Judges, who shall be appointed by the Governor and confirmed by the Senate, and who shall hold their office for six years.   The State shall be divided by the Legislature, at its first regular session after the adoption of this section, into eight judicial circuits, and one Judge shall be assigned to each circuit.   Such Judge shall hold at least two terms of his court in each county within his circuit every year, and at such times and places as shall be prescribed by law, and may hold special terms.   The Governor may, in his discretion, order a temporary exchange of circuits by the respective Judges, or order any Judge to hold one or more terms or part or parts of any term in any other circuit than that to which he is assigned.   The Judge shall reside in the Circuit of which he is Judge.   This section shall not be operative until the Legislature shall have divided this State into eight Circuits, as hereinbefore provided for, and the seven Circuit Judges holding office at the time of such division shall continue to exercise jurisdiction over their several existing Circuits as constituted at the time of such division until the Judge of the additional Circuit shall have qualified.   The Circuit Judges holding office at the time of such division shall severally continue in office until the expiration of their then existing term of office as Judges of the Circuits respectively in which, under such division, the county of his residence may be included; and a Judge for the additional Circuit shall be appointed for a term equal to the unexpired term of the other Circuit Judges upon such division being made.   The salary of each Circuit Judge shall be two thousand, seven hundred and fifty dollars."

The people were not yet ready to remove the limitation imposed by Section 35.   The rapid growth of the State in population both urban and rural, which occurred

between the years 1902-10 was not foreseen, although the growth of business made it apparent that an additional Judicial Circuit should be created and a Judge therefor should be provided.

This amendment did not purport to amend Section 10, nor did it; its effect was to destroy that Section, and amend Section 9 as to the salary of each Circuit Judge.

Up to this time, 1902, the Circuit Court Judges were provided by the constitution, no provision was made for creating the office by the Legislature, no reference was made to such power directly or indirectly, unless the constitutional declaration that there should be eight Judges and one assigned to each Circuit impliedly prohibited the Legislature from providing more Judges than one to each Circuit. If there was such implication it was a weak one, in view of the inherent power of the Legislature to divide a Circuit into two divisions and make provision for the appointment of a Judge for each division separately. See State v. Martin, 60 Ark. 343, 30 S. W. Rep. 421; Bone v. State, 86 Ga. 108, 12 S. E. Rep. 205; People v. Burch, 84 Mich. 408, 47 N. W. Rep. 765; Jordan v. Bailey, 37 Minn. 174, 33 N. W. Rep. 778; In re Cahill's petition, 110 Pa. St. 167, 20 Atl. Rep. 414; Kilpatrick v. Commonwealth, 31 Pa. St. 198; State v. Atherton, 19 Nev. 332, 10 Pac. Rep. 901; Field v. Silo, 44 N. J. L. 355. But assume that a system of Judicial Circuits and one Judge for each Circuit was clearly intended to be permanently fixed by Section 8 of the Constitution. That the framers of that instrument and the people who adopted it made no provision for the future growth of the State; that they never dreamed that the State would ever grow in population, wealth and business to that degree which would ren-

der it physically impossible for one Circuit Judge to discharge the duties and dispatch the business that might come before the court to which he was assigned, and that they thus intended to provide against that which they never thought would ever be required; the history of the State shows that the State did grow in population, wealth and business. There came to this State people in great numbers from many States in the Union, they settled among us, built homes, engaged in business, developed our lands and established industries, all of which contributed to bring about the imperative demand for an increase in the judicial machinery of our State to keep pace. Is it not most significant that the relief was sought not by a further amendment to Section 8, which dealt solely and exclusively with Circuit Courts and Circuit Judges, but by an amendment to Section 35 that prohibited in express language the creation of courts other than those specified in the Constitution? Is it not also significant that in amending Section 35 the people left it to legislative discretion to create and establish additional Judicial Circuits, thus distinguishing them from the eight Judicial Circuits which are established by the Constitution? And that in providing for additional Judges omitted to restrict the appointment of one Judge to each additional Circuit? The amendment as adopted in 1910 is as follows: "Section 35. No Courts other than herein specified shall be established in this State, except that the Legislature may provide for the creation and establishment of such additional Judicial Circuits as may from time to time become necessary, and for the appointment by the Governor and confirmation by the Senate of additional Circuit Judges therefor, whose terms of office and general juris-

diction shall be the same as is herein provided for the Circuit Judges herein already provided for, and may clothe any Railroad Commission with judicial powers in all matters connected with the functions of their office."

Here is language affirmative in character and broad in its meaning. Shall it be given by implication and strained construction a negative inference and thus contravene every principle of constitutional construction to the end that the legitimate scope of legislative power may be narrowed, that legislative discretion in the legitimate field of its operation may be restricted? It was the purpose of this amendment to give to these additional Judicial Circuits and additional Circuit Judges the character of legislative creatures so that they might be created or abolished by legislative action alone within such limits as to terms of office of the Judges as the amendment prescribes. Perkins v. Corbin, 45 Ala. 103; Larkin v. Simmons, 155 Ala. 273, 46 South. Rep. 451; State *ex rel.* Thomas v. Gunter, 170 Ala. 165, 54 South. Rep. 283; State *ex rel.* Flinn v. Wright, 7 Ohio St. 333; McCully v. State, 102 Tenn. 509, 53 S. W. Rep. 134; State v. Lindsay, 103 Tenn. 625, 53 S. W. Rep. 950. But a court created by the constitution may not be abolished by the Legislature. Perkins v. Corbin *supra;* Rhyne v. Lipscombe, 122 N. C. 650, 29 S. E. Rep. 57; McDermont v. Dinnie, 6 N. D. 278, 69 N. W. Rep. 294; Commonwealth v. Green, 58 Pa. St. 226; Kenny v. Hudspeth, 59 N. J. L. 320, 36 Atl. Rep. 662. The additional Judicial Districts and additional Circuit Judges provided for in the amendment are of constitutional authorization, but not constitutional creation. They are expressly authorized to be created by the Legislature. It is thus apparent that the purpose of the amendment was to entirely remove the

limitation prescribed by Section 35 as to the establishment of Circuit Courts and the doubtfully implied limitation as to the number of Judges therefor contained in Section 8, so far as the additional Judicial Circuits are concerned. But it is contended that the word "additional" appearing in the amendment in connection with "Judicial Circuits" and "Circuit Judges" refers to the words "Judicial Circuits" and "one Judge shall be assigned to each Circuit" appearing in Section 8 of Article V. That a system of State policy of one Judge to a Circuit was by that Section established beyond the power of legislative interference, and that nothing in the amendment shows it to have been the intention of the people to authorize the Legislature to change that system, that the amendment does not remove such limitation. With this view I cannot agree. The words of the amendment relating to Circuit Judges after providing for the creation by the Legislature of additional Judicial Circuits are as follows: "And for the appointment by the Governor and confirmation by the Senate of additional Circuit Judges therefor." This language is affirmative in character, contains no limitation express or implied on the power of the Legislature to provide two or more Judges for one Circuit, it is not doubtful in meaning, needs no construction or interpretation and under no rule of grammar do they negative the idea of more than one Judge to one Judicial Circuit. We are not permitted to indulge in speculations, nor resort to astute interpretations and invoke implied limitations appearing elsewhere in the constitution to impart to them a meaning which they do not carry upon their face. The words should be construed in the sense in which they were employed, in their "ordinary and common acceptation because they are presumed to have been so understood by

the framers of the amendment and the people who adopt-
ed it." State v. Sutton, *supra;* Miller v. Dunn, *supra.*
I can see no mysterious force in the word "additional"
to give to those affirmative words a negative meaning, to
construe a recognition of existing power into a limitation
on that power. The word "additional" as used in the
amendment can have no other meaning than "supplemen-
tal." The intention was to authorize the Legislature to
create more Judicial Circuits and provide more Circuit
Judges, as in its judgment the business, growth, increased
population and general welfare of the State required. But
limitations were placed by the amendment, positive and
unambiguous in meaning; namely, as to the terms of of-
fice and general jurisdiction of the Circuit Judges for
which the Legislature may provide, and as to the number
of Judicial Circuits and Judges, there being an implication
that such number should not be decreased. If there was
a conflict between this amendment and any part of the
constitution, the former would control. Board of Public
Instruction Polk County v. Board of County Commission-
ers, *supra.*

It was said in that case that "while implied repeals or
amendments of constitutions or laws are not favored, yet
the primary consideration is to give effect to the intent
of the law-making power as duly expressed, and this
should be done even if it results in a repeal or modifica-
tion of older inconsistent or repugnant provisions."

Section 8 contemplates that there should be only eight
Judicial Circuits and only eight Circuit Judges, so it is
said; then the words "one Judge shall be assigned to each
Circuit" necessarily refers to the eight Judicial Circuits
so intended permanently to be established. It is idle to
claim that those words referred to Judicial Circuits which

could not lawfully be established. The constitution means now what it meant when it was adopted, being a limitation upon legislative power, its language specifically applied to the subject concerning which the limitation was imposed. The creation of more Judicial Circuits than eight or more Circuit Judges than that number, was by the language of Section eight, so it is claimed, prohibited. Can it be reasonably contended that the limitation of one Judge to a Circuit applied to Circuits which could not possibly exist under the constitution? May one imply a limitation upon a power that is forbidden to be exercised? If the words "one Judge shall be assigned to each Circuit" apply only to the eight Circuits provided by Section 8, in what way does Section 35 as amended offend? If as claimed a system or policy was established by Section 8, that system or policy has been destroyed. If it was intended by the amendment which deals exclusively with Judicial Circuits and Circuit Judges merely to amend Section 8 which deals with Judicial Circuits and Circuit Judges, why was not Section 8 re-cast? Why was Section 35 which deals with limitations on legislative power as to the creation of any and all courts amended? The purpose was to leave the legislative power as to the creation of Judicial Circuits and provision for Judges therefor unlimited to be exercised as the Legislature deemed wise. If a system of eight Judicial Circuits and one Circuit Judge to each eight Circuits was established by Section 8, it would be idle to contend that that system now exists, since we have had eleven Judicial Circuits since 1911. So it is only the phantom of Section 8 and no provision in the constitution, with which the Relator would have us reconcile the language of the amendment, "so as to leave each an office to perform." How can the

provisions of Section 8 possibly operate upon Judicial Circuits created and Circuit Judges provided by the Legislature under the amendment to Section 35 which provided for a different method of creating Judicial Circuits and providing Circuit Judges therefor. This court has held that one statute repeals another when the last statute revises the subject-matter of the former. Florida East Coast R. Co. v. Hazel, 43 Fla. 263, 31 South. Rep. 272; State v. Gadsden Co., 63 Fla. 620, 58 South. Rep. 232; State ex rel. Gonzalez v. Palmes, 23 Fla. 620, 3 South. Rep. 171.

It is urged that there has been a legislative construction of the provisions of the amendment in that in 1911 three additional Judicial Circuits were created and one Judge for each provided by the Legislature. But who is to say that the Legislature thought that two Circuit Judges were needed for any one of the three additional Circuits so created and was deterred from providing them by consideration of the provisions of Section 8 of the Constitution? Is it not more reasonable to say that more Judges than one to each Circuit were not needed?

It is also contended that in 1912, when Article V was amended by adding Section 42, providing for "another Judge of the Circuit Court for Duval County," the people construed the amendment to Section 35 and virtually held that the Legislature did not have the power to provide for such a Judge. This may be, doubtless is true. Duval County was a part of the Fourth Judicial Circuit, consisting of Duval, St. Johns, Nassau and Clay Counties. The Legislature could not provide a Judge of the Circuit Court for Duval County and require him to reside in that county and that his salary and expenses should be paid by that county. The Constitution only required the Judge

to reside in his Circuit, but Duval county wanted another Circuit Judge, one of whom to be required to reside in that county, and that his salary and expenses should be paid by Duval county, which would not have been permissible without such amendment. The two amendments referred to, one amending Section 35 adopted in 1910, and the one amending Section 1 adopted in 1914, show the intention of the people to have been to leave the matter of the creation of more Judicial Circuits and presiding Judges therefor, and establishing other courts or commissions entirely to legislative discretion.

I do not find in the Constitution any provision which in express terms or by necessary implication, forbids the exercise of the power by the Legislature to create an additional Judicial Circuit and provide more than one Circuit Judge therefor. Cooley's Const. Lim. 124-6; Neal v. Shinn, 49 Ark. 227, 4 S. W. Rep. 771; Scales v. State, 47 Ark. 476, text 481, 1 S. W. Rep. 769. And as judicial interposition is never justified to avoid an Act of the Legislature unless it is clear beyond reasonable doubt that the Act in question is prohibited by some express provision of the Constitution or some necessarily implied limitation upon the legislative power. I think the Act is valid. Cheney v. Jones, 14 Fla. 587, text 607; State *ex rel.* Guyton v. Croom, 48 Fla. 176, 37 South. Rep. 303; Thomas v. Williamson, 51 Fla. 332, 40 South. Rep. 831; Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, text 734, 17 South. Rep. 902; Holton v. State, 28 Fla. 303, 9 South. Rep. 716; State *ex rel.* Moodie v. Bryan, 50 Fla. 293, text 355-393, 39 South. Rep. 929; Campbell v. Skinner Mfg. Co., 53 Fla. 632, text 638, 43 South. Rep. 874; Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747; State *ex rel.* Turner v. Hocker, 36 Fla. 358, 18 South. Rep.

767.    But as the view above expressed is not the view of the majority of this court, it is necessary to consider the question whether the provision providing for the appointment of two Circuit Judges for the Twelfth Judicial Circuit is such a material portion of the Act and so connected with the other portions of said Act as to render the whole Act unconstitutional and void, so that the portions of the Act reconstructing the Fourth Judicial Circuit are also void.

It was said by this court in the case of Hayes v. Walker, *supra,* "If a portion of a statute is unconstitutional and such portion can be eliminated or disregarded without impairing the effectiveness of the remaining portions of the statute for the purposes intended, and without causing results not contemplated or desired by the Legislature, and it does not appear from a consideration of the entire Act and the purposes for which it was enacted that the legislative authority would *not* have enacted the valid portions without the invalid portions, effect will be given to so much of the Act as is constitutional and can be made effective for the purpose intended by the enactment." It was also said that where the *constitutional* portion of an Act is not dependent upon the unconstitutional portion for effectiveness, and the constitutional portion is sufficient of itself to accomplish the purpose of the enactment, the unconstitutional portion may be disregarded or eliminated and effect given to the remainder of the statute.

While the above language was not necessary to the decision in the above case, as those portions of the act which the court had under consideration and which were attacked as invalid, were held by the court to be valid, yet

VOL. 70, JUNE TERM, 1915.          95

State ex rel. West v. Hilburn.—Dissenting Opinion.

the language announces a principle recognized by this court in a long line of decisions.

It is clear that no portion of the act is dependent for effectiveness upon that clause in Section 1 which the court holds to be objectionable, namely "And for this additional Judicial Circuit there shall be appointed by the Governor and confirmed by the Senate two additional Circuit Judges other than the Judge of the Circuit Court for Duval County under Section 42 of Article V of the Florida Constitution," unless it be the latter part of the so-called proviso relating to the retention of jurisdiction by the Judges and State Attorneys of the Fourth and Eighth Judicial Circuits over their existing Circuits until June 7, 1915, which latter part referred to is as follows: "And in the event said additional judges are not then appointed and qualified, until said additional judges shall have qualified."

If the clause providing for two additional Circuit Judges is void, then the act makes no provision at all for the appointment of any judge for the new Judicial Circuit. The purpose of a proviso is to except something from or to restrain the generality of what precedes it, not to enlarge or extend the section of which it forms a part. State *ex rel.* Moodie v. Bryan, 50, Fla. 293, text 383, 39 South. Rep. 929; County Commissioners of Lake County v. State, 24 Fla. 263, 4 South. Rep. 795.

The entire clause beginning with the word "provided," builds upon the preceding enactment, which is that on and after the seventh day of June, A. D. 1915, the *Circuit Courts* of the Fourth, Eighth and Twelfth Judicial Circuits respectively, then composed of the counties as set forth in the act, shall exercise jurisdiction over their Circuits respectively. Now by the eleventh section of the Act it did not become effective until June 7, 1915,

until which time from the date the act became a law, the proviso continued the Judges and State Attorneys of the Fourth and Eighth Judicial Circuits in the exercise of their jurisdiction over their existing Circuits and the counties therein, but the particular clause referred to purports to continue the State Attorneys and Judges of the Fourth and Eighth Circuits in the exercise of their jurisdiction over the old Circuits until that condition happens which according to the opinion of the court cannot happen. But if the act is valid notwithstanding the elimination of the clause providing for two Judges for the Twelfth Circuit, then this latter clause, whether proviso or condition, does not conform to the obvious policy and intent of the legislature and therefore does not render the act inoperative. McCormick v. Village of West Duluth, 47 Minn. 272, 50 N. W. Rep. 128.

The clause mentioned should fall with the clause providing for two additional judges for the Twelfth Circuit to which it refers and to which by words and manifest intention it is connected and by which it is controlled. If the legislature could enact a statute providing for an additional Judicial Circuit and make no provision in the act for appointment by the Governor of a Circuit Judge therefor, and should enact such a statute and write therein such a clause as the one mentioned, namely that the Judge of the old Circuit out of which the new Circuit was carved should exercise jurisdiction over the territory of the old Circuit, until two Judges should be appointed and assigned to the new Circuit such condition would not conform to the policy and intention of the legislature which was obviously to create a new or additional Circuit, the clause should therefore be disregarded. The clause is not a condition precedent. It does not provide that the act

shall not go into effect until two Judges for the Twelfth
Circuit are appointed and qualified.   On the contrary it
provides in express terms that the act shall go into effect
on the 7th day of June, 1915.   The purpose of the clause
was merely to provide for the discharge of judicial busi-
ness in the territory of the new Circuit until the counties
should be provided with a Judge duly qualified to trans-
act business.   Automatically upon the act becoming a law
a Judge was provided by reason of the residence, in the
territory of the new Circuit, of the Judge of the Fourth
Circuit.     But Judge Gibbs who was Judge of the Fourth
Circuit could have taken up his   residence in St. Johns
county, or in Clay county a day before the act became a
law and by such act the Fourth Circuit would have been
provided with a Judge and the clause would have fallen
because repugnant to the provisions of the Constitution
that a Circuit Judge remains Judge of that Circuit which
embraces the county of his residence regardless of legisla-
tion. ' Could it be contended that in such a case this in-
consistent and repugnant clause, clearly opposed to the
spirit and obvious purpose of the act would defeat the will
of the legislature?   Suppose it were permissible under the
constitution to provide by legislative enactment for two
judges for the Twelfth Circuit, and before it became a
law Judge Gibbs should have taken up his residence in
either St. Johns or Clay counties, would not the clause, so
far as Judge Wills, Judge of the Eighth Circuit, exercis-
ing jurisdiction in Putnam county, until two Judges of the
Twelfth Circuit had been appointed and qualified, been
void as in violation of the constitution?   Should the valid-
ity of a general act of the legislature depend upon the will
of a man?   Shall we ascribe omniscience to the legislature
and say that they foreknew Judge Gibbs' act?   The clause

7

is a nullity, it is meaningless and repugnant to the body of the act and should be rejected. Penick v. High Shoals Mfg. Co., 113 Ga. 592, 38 S. E. Rep. 973; Mullins v. Treasurer of the County of Surrey, L. R. 5 Q. B. Div. 170. This clause does not show it to have been the plain intent of the Legislature to make the going into effect of the act dependent upon the appointment of two judges for the Twelfth Circuit. It does not provide that the act shall not go into effect until the happening of that contingency. The principal purpose of the act was not to secure two judges for the Twelfth Circuit, but to create an additional Judicial Circuit, in order to relieve the crowded condition of the court's dockets in those circuits. To make the validity of the act depend upon a compliance with that clause would be to destroy the will of the Legislature as exhibited in the main purpose of the act, it would be giving to an unimportant proviso or subsequent condition paramount consideration and to convict the Legislature of enacting an absurdity by declaring in one part of the section that the act should not go into effect on a certain day and in another part of the section that it should not go into effect until the impossible happened. To hold the clause void and not operative does not extend the scope of the act, its purpose would be still preserved and its general scheme carried out. The clause simply provided that the Judges of the Fourth and Eighth Circuits and the State Attorneys therein should exercise jurisdiction in the territory covered by their existing circuits until the two additional judges should be appointed and qualified.

An act redistricting a county for supervisors was held valid though it unconstitutionally provided that incumbents should hold over beyond their election terms until they could be immediately succeeded by supervisors elect-

ed by the act. Christy v. Board of Supervisors Sacramento County, 39 Cal. 3.

It being decided by the court that the clause in the act providing for two judges for the Twelfth Circuit is void, may the act in so far as it creates an additional judicial circuit be valid notwithstanding its failure to provide for the appointment by the Governor of a Circuit Judge therefor?

If the view expressed in the majority opinion is correct as to the meaning and effect of the amendment to Section 35 adopted in 1910, and the views expressed by the judges of this court in an advisory opinion to the Governor as to a judge remaining judge of the circuit embracing the county of his residence is also correct, it follows that one of the two propositions is true when the Legislature creates an additional judicial circuit, namely:

1st. That such additional circuit must be created of counties that do not at the time the act becomes a law, embrace the residence of a Circuit Judge or Judges; or

2nd. That in creating an additional circuit the legislature could not definitely provide for the appointment of an additional judge for the newly created circuit.

Now in creating an additional Judicial Circuit it becomes necessary to change the boundaries of other cir cuits, by taking therefrom a county or counties which formerly formed a part of the original circuit or circuits as the case may be, as in this case in creating the Twelfth Circuit two counties were taken from the Fourth, which two counties, Duval and Nassau, now constitute the Twelfth Circuit. One county, Putnam, was taken from the Eighth Circuit and with St. Johns and Clay counties now constitute the Fourth.

But the Legislature could not definitely provide for

the appointment by the Governor of an additional judge for either the Fourth or Twelfth Circuits because it was impossible for the Legislature to foreknow the place of the residence of the Judge of the old circuits out of whose territory the new Twelfth and new Fourth were established. For as pointed out heretofore if provision had been made for the appointment of a judge for the Twelfth Circuit, when the act became a law it might have found the Judge in the Fourth Circuit a resident of Duval county, who thereby under the terms of the constitution became Judge of the Twelfth Circuit, which would leave the new Fourth Circuit without a judge, but as it is said the Constitution in Section 8 of Article V requires the assignment of one judge to each circuit it would become the business of the Governor to appoint a Circuit Judge· and assign him to such circuit.

The first proposition cannot be true, because the constitution only requires a judge to reside within the circuit of which he is judge and he may at any time take up his residence in any county thereof, thus making the valid exercise of legislative will in the matter of creating an additional circuit dependent upon his act in establishing a residence, which he may do before the bill providing for the change becomes a law.

According to the view expressed in the majority opinion, if the act under consideration in this case had provided for only one additional judge for the Twelfth Circuit, it would have been void because when the act became a law it found Judge Gibbs of the Fourth Circuit a resident of Duval county and therefore Judge of the Twelfth Circuit· and as the Governor could not have appointed a judge for that circuit, the act would never have gone into effect because of the last clause of Section 4 above referred to, but

if when the act was passed over the Governor's veto the Judge of the Fourth Circuit had been residing in St. Johns county, and in the meantime the Judge of the Eighth Circuit had taken up his residence in Putnam county, thus making two judges for the Fourth Circuit, the act would have been void for that reason. As one may acquire a residence in a day, who moves into a community with the intention of living there permanently, it follows that the first proposition cannot be true because as a judge cannot be legislated out of his residence or his office, this legislative will would be defeated or carried out accordingly as a man may reside in one county or another. Residence is made up of fact and intention. Wright v. Genesee, Circuit Judge, 117 Mich. 244, 75 N. W. Rep. 465; State v. Wimby, 119 La. 139, 43 South. Rep. 984. Removing to another place *animo non revertendi* and is gained by remaining in such place *animo manendi*. Tracy v. Tracy, 62 N. J. Eq., 807, 48 Atl. Rep. 533; Adams v. Evans, 19 Kan. 174; Smith v. Croom, 7 Fla. 81.

If it is true that Section 8 of Article V mandatorily requires one judge to each circuit, and the Legislature has the power to create additional Judicial Circuits, then the creation of an additional Judicial Circuit by implication creates a Circuit Court therefor and if no Judge is provided for such court the Governor by implication has the power to appoint a Circuit Judge and assign him to the circuit which is without one. This proposition is conceded by the Relator's counsel. While this view renders the words in the amendment of 1910, providing for appointment by the Governor of "Additional Judges" for such additional circuits superfluous and meaningless, yet in view of the conclusion reached by the majority I think the view is correct.

As to the parliamentary question I think that is settled by the majority opinion in the case of State *ex rel.* v. Butler, decided today. As to the other provisions of the act we all agree that they are embraced in the title or properly connected therewith, or that such matters contained therein that may be local in character, may be eliminated without affecting the purpose of the act.

Cockrell, J., concurs in this dissent .